[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16426
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-14420-FJL


BRYANT L. BURGOS,

                                                        Plaintiff-Appellant,

versus

ACTING COMMISSIONER OF SOCIAL SECURITY,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 21, 2017)


Before JORDAN, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Bryant L. Burgos appeals the district court's order affirming the Commissioner of the Social Security Administration's decision to deny his applications for disability insurance benefits and supplemental security income. On appeal, Burgos argues, among other things, that the administrative law judge ("ALJ") erred by failing to failed to indicate what weight, if any, he gave to the medical opinions of Burgos's treating psychiatrist. After careful consideration, we conclude that the ALJ erred by failing to identify the weight that was given to the treating psychiatrist's opinions and that this error was not harmless. Accordingly, we reverse the district court's judgment and remand to the district court with instructions to remand to the Commissioner.

## I.    FACTUAL BACKGROUND

In July 2012, Burgos applied for disability insurance benefits and supplemental security income, alleging that he was disabled as of February 2008. Shortly after filing his application, Burgos explained that he was in severe, crippling pain as the result of two automobile accidents. He further claimed that as a result of the pain he had become depressed and suicidal. After his applications were denied, Burgos requested and received a hearing before the ALJ.

### A.    The ALJ Hearing

At the hearing, the ALJ heard testimony from Burgos describing his pain and other symptoms. In addition, the ALJ received evidence from Burgos's

2

medical providers reflecting the treatments he had received and their opinions about his condition.  The ALJ also heard testimony from a vocational expert ("VE").

### 1.    Burgos's Testimony

Burgos testified before the ALJ about his physical and mental impairments.[1] He described how he experienced constant lower back pain after being injured in automobile accidents in 2002 and 2008.  He had tried treating the pain with epidural shots, pills, and creams, but nothing worked to alleviate his pain.  Burgos explained that the medication helped him only for a few hours at a time and that he also wore a back brace to try alleviate his pain, but it did not do so.  Because nothing helped with his pain, Burgos testified that he planned to have spinal fusion surgery.

Burgos described the limitations he experienced as a result of his back pain. He explained that he could only sit for about 10 minutes, stand for about 10 minutes, and walk for one or two blocks before feeling pain.  He also testified that it hurt when he lifted anything.

---

[1] Although Burgos argues on appeal that the ALJ erred in considering his mental impairments, we also set forth the facts related to Burgos's physical impairments.  The two issues are related as Burgos asserted that his physical impairments led to or made more severe his depression and anxiety.  To understand Burgos's mental condition then, we also must understand his physical condition.

With respect to his mental state, Burgos testified that he suffered from depression and anxiety. Although he took medication for both conditions, he still experienced anxiety. Burgos described how he would become nervous, sweat, and feel nauseated when in group settings or meeting a new person. His anxiety also caused him to stutter excessively. Burgos explained that, as a result, he had difficulties speaking on the phone or leaving his house. He also described having problems with his memory as well as difficulty concentrating and focusing.

Burgos testified about the combined effect of his back pain, depression, and anxiety. In an average week, he had five bad days in which he had trouble even getting out of bed. He was unable to do household chores, cook, or drive. On good days, he visited his two children and took them to the pool, which helped his back pain.

### 2.    Burgos's Medical Records

The evidence before the ALJ also included medical records regarding Burgos's physical and mental impairments. The medical records reflected that Burgos sought treatment for his back pain. In 2011 and 2012, he was treated by Dr. Gilbert Leung, a pain management doctor, for his chronic lower back pain. At his first appointment, Burgos reported to Leung that his pain was worsening even though he wore a pain medication patch. Leung prescribed tramadol, a pain medication. But the medication was ineffective. To determine the cause of

Burgos's back pain, Leung ordered x-rays of Burgos's thoracic spine, which came back normal. Leung also ordered an MRI, which showed no herniation but reflected minor narrowing of the lumbar discs. Leung referred Burgos to a neurosurgeon who determined that he was not a candidate for surgery. Leung also referred Burgos for physical therapy.

Later in 2012, Burgos began to see a new pain management doctor, Dr. Abel Morillo, who continued to treat him through the time of the ALJ hearing. Morillo prescribed Burgos medication for his pain. In addition, Morillo administered several rounds of nerve block injections, but Burgos had a poor response to the nerve blocks. While seeing Morillo, Burgos had another MRI, which showed that he had degenerative disc disease.

In 2014, Burgos saw Dr. Christopher Demassi, a neurosurgeon, and Dr. Damon Salzman, a neurologist. Burgos reported to Demassi that he had contemplated suicide because his pain was so severe. Demassi ordered a discogram, which is a type of diagnostic test, that reproduced Burgos's pain. Demassi also referred Burgos to Salzman for further diagnostic testing, which showed that all the muscles in Burgos's lower extremities were normal.

The medical records also reflected that Burgos received treatment for his anxiety and depression. Although Burgos had not sought mental health care prior to applying for disability, beginning in October 2012 and continuing through the

5

date of the ALJ hearing he received regular mental health care from both Dr. Maximo Monterrey, a psychiatrist, and Linda Graditor, a therapist.

Monterrey's notes reflect that Burgos reported low motivation and energy with problems concentrating.  Burgos also told Monterrey that he would vomit when he had social interactions.  Monterrey diagnosed Burgos with depression and a mood disorder and prescribed him anti-depressant and anti-anxiety medications.

While treating Burgos, Monterrey completed two questionnaires setting forth his opinions about Burgos.  First, in January 2013, Monterrey completed a treating source mental status report.  He diagnosed Burgos with a mood disorder that was due to his general medical condition and described Burgos as very depressed.  Monterrey noted that Burgos had a logical thought process and unimpaired orientation, but he stated that Burgos's recent memory was impaired. When asked whether Burgos was capable of sustaining work activity for eight hours a day and five days a week, Monterey described his capabilities as very limited.

Second, in March 2014, Monterrey completed a Psychiatric/ Psychological Impairment Questionnaire.  He again diagnosed Burgos with a mood disorder due to Burgos's general medical condition.  He identified the following clinical findings as supporting his diagnosis:  sleep disturbance; personality change; mood disturbance; emotional liability; pervasive loss of interests; difficulty thinking or

6

concentrating; social withdrawal or isolation; blunt, flat, or inappropriate affect; decreased energy; hostility and irritability; low motivation; and multiple crying episodes.  He noted that Burgos had poor recent memory and concentration.  He further indicated that Burgos had no social life.  Monterrey explained these opinions were based on his psychiatric evaluation and follow up treatments.

In the questionnaire, Monterrey rated the degree to which Burgos could perform certain activities.  He opined that Burgos had moderate limitations in his ability to remember one or two step instructions and marked limitations in his abilities to maintain attention and concentration for extended periods of time; perform activities within a schedule, maintain regular attendance, or be punctual within a customary tolerance; or to complete a normal work week without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods.  Monterey further opined that Burgos was incapable of tolerating even low stress work.  He expected Burgos's impairments to last at least 12 months.

Monterrey's notes from around the time he completed the second questionnaire reflect that Burgos faced increased stress in his relationship with his wife.  Ultimately, Burgos moved in with his mother, who subsequently reported to Monterrey that Burgos had physically assaulted her.

7

Graditor, a therapist, also regularly treated Burgos. The therapy sessions focused on Burgso's depression and anxiety. Graditor's notes reflect that Burgos experienced mood swings. Although Burgos sometimes reported being less depressed, Graditor's notes reflect that at other appointments his condition was worse and that he reported suicidal thoughts or experienced crying episodes. At one appointment, Burgos told Graditor he was having vision problems, and Graditor indicated in her notes that he may have been hallucinating. Graditor also noted that Burgos had two episodes of violence. At one point when Burgos stopped taking his medication, Graditor noted that he became angry and depressed and experienced more crying episodes.

The ALJ also reviewed other evidence about Burgos's mental health condition in the form of the opinion of Dr. Nancy Dinwoodie, a state psychiatric consultant, who completed her report in January 2013. She noted that therapy had helped Burgos and that he was not alleging any limitations on his mental functioning.[2] She concluded that his affective disorder resulted in only mild limitations.

---

[2] Dinwoodie relied on a report of a phone call in which Burgos reported that he was not alleging limitations in his mental functioning. In the same phone call, Burgos reported that he had been in so much physical pain that he had planned to hurt himself but did not do so after talking to his mother. In any event, it was clear at the hearing that Burgos was claiming that he was disabled because of both physical and mental impairments.

8

### 3.    The VE's Testimony

The ALJ also heard testimony from the VE.  The ALJ asked the VE what work a hypothetical person with Burgos's age, education, and past work history could perform if he could perform work that required lifting 20 pounds only occasionally and ten pounds frequently; standing for six hours a day; sitting for six hours a day; occasionally climbing ladders, ropes, or scaffolding; and occasionally stooping.  The VE answered that such a hypothetical person could perform all of Burgos's past relevant work.

The ALJ then asked what work a person could perform if there were additional psychological or mental limitations and the person could only understand, remember, and carry out simple instructions.  The VE explained that such a person would be unable to perform Mr. Burgos's past relevant work but could still perform work as a cashier II, sales attendant, or mail clerk.

Burgos's attorney then questioned the VE about a hypothetical person with more severe impairments.  He asked what jobs a hypothetical person with the same work, age, and education level as Burgos could perform if that person would need to take at least two unscheduled breaks for ten to 20 minutes each day.  The VE answered that such breaks would not be tolerated and that such a person would be unable to work.  Burgos's attorney then asked what jobs a hypothetical person could perform if due to mental or physical impairments that person was off task for

9

15 percent of the day.  The VE answered that this limitation also would eliminate all work.

## B.    The ALJ's Decision

In a written decision, the ALJ applied the five-step sequential evaluation process and determined that Burgos was not disabled.  At the first step, the ALJ found that Burgos had not engaged in substantial gainful activity since February 2008, the alleged onset date of his disability.[3]

At the second step, the ALJ determined that Burgos's severe impairments included bulging discs and degenerative disc disease.  The ALJ found that his anxiety and depression were not severe impairments because they caused no more than minimal limitations in his ability to perform basic mental work activities.  The ALJ acknowledged that Monterrey had diagnosed Burgos with a mood disorder and found Burgos's thought process relevant, coherent, and logical but his concentration poor.  The ALJ also stated that Monterey had concluded that Burgos was capable of performing unskilled work even though Monterey identified several areas in which Burgos had marked limitations.[4]

---

[3] The ALJ noted that Burgos had earned some income from repairing computers for friends from 2011 to 2013 but found that these occasional jobs did not rise to the level of substantial gainful activity.

[4] The ALJ also noted that Burgos had been treated by Graditor, a therapist.  But the ALJ did not discuss her notes because they were illegible.

10

The ALJ concluded that Burgos had no severe mental impairment because he had only mild limitations in activities of daily living; social functioning; and concentration, persistence, and pace.  The ALJ further determined that Burgos had experienced no episodes of decompensation with extreme duration.  The ALJ made clear that this assessment was used only to rate the severity of Burgos's mental impairment and not to determine his residual functional capacity.  The ALJ explained that the residual functional capacity assessment required a more detail assessment of Burgos's mental functioning.

At the third step of the analysis, the ALJ found that Burgos had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  To evaluate the fourth and fifth steps of the sequential analysis, the ALJ considered Burgos's residual functional capacity.  The ALJ found that Burgos had the residual functional capacity to perform light work except that he could only occasionally stoop or climb ladders, ropes, or scaffolding.

In assessing Burgos's residual functional capacity, the ALJ never directly addressed whether Burgos had any mental limitations.  The only reference to Burgos's mental health in this portion of the ALJ's opinion was when the ALJ summarized Burgos's testimony, noting that Burgos testified that he had seen a psychiatrist and was nervous and depressed.  After discussing Burgos's testimony

11

regarding his physical limitations, the ALJ found that Burgos's medically determinable impairments could reasonably be expected to cause his symptoms but that Burgos's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible for the reasons set forth elsewhere in the opinion.

After making this credibility determination, the ALJ reviewed the medical about Burgos's physical injuries. The ALJ never discussed the medical evidence about Burgos's treatment for his anxiety or depression and thus never expressly addressed at the residual functional capacity stage what weight was given to Monterrey's opinions.

Given Burgos's residual functional capacity, the ALJ then found at the fourth step of the analysis that he could perform his past relevant work as an IT support person, database analyst, and database clerk. Alternatively, even assuming that Burgos was unable to perform his past work, the ALJ found at the fifth step of the analysis that there were a significant number of jobs in the national economy that he could perform including cashier II, sales attendant, and mail clerk. In reaching this conclusion, the ALJ appears to have implicitly relied on the VE's testimony identifying the jobs a hypothetical person with Burgos's age, education, and past work history could perform if he was able to understand, remember, and

12

carry out simple instructions.  Accordingly, the ALJ found that Burgos was not disabled.[5]

## C.    District Court Proceedings

Burgos then filed an action in federal district court, asking the court to reverse the Commissioner's decision.  Burgos argued that the ALJ erred by failing to identify the weight given to Monterrey's opinions and by improperly evaluating Burgos's credibility.  Burgos asserted that the ALJ was required to identify the weight given to Monterrey's opinions for both assessing whether Burgos's mental impairments were severe and determining his residual functional capacity.

The district court affirmed the ALJ's decision.[6]  First, the district court explained that the ALJ's analysis of Monterrey's opinions was sufficient.  The district court agreed with the ALJ that Monterrey had essentially opined that Burgos was capable of performing unskilled work when he rated him as having mild to moderate impairments.  The district court treated the ALJ as having implicitly given weight to this opinion about Burgos's limitations.  Although the ALJ included this analysis at step two of the sequential analysis, the district court

---

[5] Burgos requested that the Appeals Council review the ALJ's decision.  But the Appeals Council denied his request for review.  Burgos raises no claim on appeal regarding the Appeals Council's denial of review.

[6] Although the district court affirmed the ALJ, the court noted that the ALJ's decision could have been "more thorough" and included "express analysis."  Order at 17 (Doc. 22).

explained that it also applied to the determination of Burgos's residual functional capacity at steps four and five.

The district court did not directly address Burgos's contention that the ALJ improperly assessed his credibility. Instead, the court supplied its own reasons why the ALJ could have found Burgos's testimony about the extent of his mental health limitations not credible. First, the court explained that Burgos did not initially claim that he ceased working because of his mental health and sought no mental health treatment until after applying for benefits. Second, the court determined that Burgos was claiming that his mental health impairment was interrelated with his back pain and that his mental health providers based their diagnoses on Burgos's severe pain. The court concluded that because the ALJ found that the back pain was less severe than Burgos described, the ALJ also could have determined that his mental condition was less severe.

This is Burgos's appeal of the district court's decision.

## II.    STANDARD OF REVIEW

When, as here, an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review the Commissioner's decision to determine if it is supported by substantial evidence, but we review *de novo* the legal principles upon which the decision is based.

14

*Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence

refers to "such relevant evidence as a reasonable person would accept as adequate

to support a conclusion." *Id.* Our limited review precludes us from "deciding the

facts anew, making credibility determinations, or re-weighing the evidence." *Id.*

We further review a credibility determination for substantial evidence. *Marbury v.*

*Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). In addition, an error is harmless if it

does not affect the Commissioner's ultimate decision. *See Diorio v. Heckler*,

721 F.2d 726, 728 (11th Cir. 1983).

### III.   LEGAL ANALYSIS

An individual who is disabled is eligible for disability and social security

income benefits. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). To determine

whether a person is "disabled," an ALJ applies a five-step, sequential process and

examines whether the claimant: (1) is engaging in substantial gainful activity; (2)

has a severe and medically determinable impairment; (3) has an impairment or

combination of impairments that satisfies the criteria of a "listing"; (4) can perform

her past relevant work in light of her residual functional capacity; and (5) can

adjust to other work in light of her residual functional capacity, age, education, and

work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Burgos argues that the ALJ erred in assessing whether Burgos's impairments

were severe at step two of the sequential analysis and his residual functional

capacity at steps four and five because the ALJ failed to indicate what weight, if any, was given to Monterrey's opinions regarding Burgos's mental impairments. As we explain below, we agree that the ALJ erred by failing to indicate what weight was assigned to Monterrey's opinions. Although this error was harmless with respect to the ALJ's determination at step two, it was not harmless with respect to the ALJ's assessment of Burgos's residual functional capacity at steps four and five. Accordingly, we conclude that ALJ's decision should be vacated and the case remanded.

**A.     The ALJ Erred by Failing to Identify the Weight Assigned to Monterrey's Opinions.**

Burgos argues that the ALJ erred by failing to assign a weight to Monterrey's opinions. We agree. We generally require an ALJ "to state with particularity the weight he gave the different medical opinions and the reasons therefor."[7] *Sharfarz v. Brown*, 825 F.2d 278, 279 (11th Cir. 1987). In addition, the ALJ must give a treating physician's opinion "substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Good cause exists when: (1) the treating

---

[7] Medical opinions include statements from medical sources that "reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

physician's opinion "was not bolstered by the evidence," (2) the "evidence supported a contrary finding," or (3) the "treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41.

We have explained that "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). In the absence of a statement from the ALJ about the weight assigned to the opinion of a medical provider, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (internal quotation marks omitted). When an "ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (internal quotation marks omitted).

Here, the ALJ erred because even though Monterrey was Burgos's treating psychiatrist, the ALJ failed to identify the weight he gave to Monterrey's opinions and his reasons for rejecting these opinions. As such, we conclude that the ALJ erred and remand is warranted.

The Commissioner argues that there is no error here because the ALJ summarized Monterrey's opinions in one paragraph in the decision when discussing the severity of Burgos's impairment.  The Commissioner argues we can infer from this single paragraph that the ALJ gave little weight any portion of Monterrey's opinion that found Burgos had more than minor limitations.  We disagree.  Although it is possible that the ALJ considered and rejected Monterrey's opinions, without any clearly articulated ground for such a rejection, we are unable to determine whether the ALJ's conclusions were rational and supported by substantial evidence.[8]  *See Winschel*, 631 F.3d at 1179 (internal quotation marks omitted).

More particularly, we are unable to determine from the ALJ's opinion what role Monterrey's opinions played in the ALJ's assessment of Burgos's residual functional capacity.  The ALJ discussed Monterrey's opinions only with respect to whether Burgos had a severe impairment.  The ALJ further explained that the determination of whether Burgos's mental impairments were severe was not a residual functional capacity assessment because such an assessment required more

---

[8] The Commissioner argues on appeal that the ALJ rejected Monterrey's opinions to the extent that they lacked support in the objective medical evidence and were inconsistent with his own records or Dinwoodie's assessment.  But the ALJ never made a finding that Monterrey's opinions lacked support in the objective medical evidence, were inconsistent with Monterrey's own records, or were inconsistent with Dinwoodie's assessment.  We reject the Commissioner's speculation about the basis for the ALJ's decision.

18

detailed considerations.[9]  Because we cannot determine the weight that the ALJ

gave Monterrey's opinions, especially in formulating the residual functional

capacity assessment, we conclude that the ALJ erred.[10]

**B.      The Error Was Harmless as to Whether Burgos Had a Severe Impairment at Step Two But Not Harmless as to the ALJ's Assessment of Burgos's Residual Functional Capacity at Steps Four and Five.**

The Commissioner argues that even if the ALJ erred, any error was

harmless.  The Commissioner contends that the error was harmless because (1) the

ALJ ultimately concluded at step two of the sequential analysis that Burgos

suffered from severe physical impairments and (2) the ALJ's assessment of

Burgos's residual functional capacity at steps four and five would have remained

the same even absent the error.  Although we agree with the Commissioner that

any error at step two was harmless, we cannot say that the error was harmless as to

the ALJ's assessment of Burgos's residual functional capacity.

---

[9] We have explained that the inquiry into whether a claimant has a severe impairment that meets a listing at steps two and three is "undeniably distinct" from the inquiry assessing the claimant's residual functional capacity at steps four and five.  *Winschel*, 631 F.3d at 1180.

[10] The Commissioner argues that under our unpublished decision in *Newberry v. Commissioner,* 572 F. App'x 671 (11th Cir. 2014), an ALJ is not required to assign weight to all aspects of a treating provider's opinions.  In *Newberry*, a treating provider offered several opinions about the claimant.  The ALJ gave reasons why some of the opinions were unsupported by the medical record but failed to explicitly assign weight to each part of the provider's opinion. We held that the ALJ did not err because there was no rigid requirement that an ALJ must discuss every aspect of a treating provider's opinions.  *Id.* at 671-72.  Of course, "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."  *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007). And *Newberry* is not persuasive here because nothing in *Newberry* addressed whether it was appropriate for an ALJ to fail to assign weight to any aspect of a treating provider's opinions.

19

As regards the second step of the sequential analysis, we conclude that the ALJ's error was harmless. Step two is satisfied when the claimant has any severe impairment. Because the ALJ concluded that Burgos's physical impairments were severe, any error regarding the assessment of whether his mental impairments were severe could not have affected the outcome of the ALJ's analysis at step two. *See Diorio*, 721 F.2d at 728.

With respect to the assessment of Burgos's residual functional capacity at steps four and five, the Commissioner argues any error was harmless because it was clear that the ALJ gave controlling weight to Monterrey's opinion that Burgos was capable of performing unskilled work—that is, work that "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). The Commissioner asserts that this opinion provides substantial evidence to support the ALJ's conclusion that Burgos could perform unskilled work. We disagree because Monterrey never directly opined that Burgos could perform unskilled work, and there is no substantial evidence showing that Monterrey indirectly opined Burgos could perform unskilled work.

Monterrey identified restrictions that would leave Burgos unable to perform unskilled work—that is, work that involved little or no judgment and simple duties that could be learned in a short period of time. *See* 20 C.F.R. §§ 404.1568(a),

416.968(a). We acknowledge that Monterrey determined that Burgos's ability to remember one or two step instructions and make simple work related decisions were significantly affected but not precluded, which suggests he could perform unskilled work.  But Monterrey further opined that Burgos could not maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, or be punctual within a customary tolerance; or complete a normal workweek without interruptions from psychologically based symptoms or performing at a consistent pace without an unreasonable number and length of rest periods.  Monterrey also explained that Burgos was unable to work because he could not tolerate the minimal efforts that work would require and was incapable of handling even low stress.  Given these limitations, we cannot say that there is substantial evidence to show that Monterrey opined that Burgos could perform unskilled work.

Because Monterrey never opined that Burgos could perform unskilled work, we cannot say that the ALJ necessarily would have reached the same conclusion about Burgos's residual functional capacity if the ALJ had properly considered Monterrey's opinions.[11]  The ALJ's error, thus, was not harmless.[12]

---

[11] The district court affirmed the ALJ's disability determination in part because Burgos had not sought mental health treatment until after he applied for disability benefits, apparently reasoning that Burgos's lack of mental health treatment was evidence that he experienced no functional effects from his depression and anxiety.  But an ALJ is prohibited from drawing "any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual

## IV.    CONCLUSION

For the reasons set forth above, the district court's judgment is reversed.

This case is remanded to the district court with instructions to remand to the

Commissioner.

**REVERSED AND REMANDED.**

---

may provide." Social Security Regulation 96-7p (SSR 96-7p) at 7; *see Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015). Because Burgos was given no opportunity to explain why he failed to seek mental health treatment prior to filing for benefits, neither the ALJ nor the district court could draw inferences about his symptoms or their functional effects from that failure.

[12] Burgos also argues that remand is required because the ALJ erred in assessing his credibility with respect to his mental impairments. Because we are reversing the district court's decision and instructing the court to remand to the ALJ on the basis that the ALJ erred in failing to assign a weight to Monterrey's opinions, we need not address the merits of this argument.