[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 30, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12515

_____

D. C. Docket No. 02-23286-CV-AMS

PERCY BONILLA,
MIGUEL HERNANDEZ,
CARLOS CRUZ,
MICHAEL MACHADO,
JULIO J. ALVAREZ,
GERMAN SANDOVAL,
CARLOS CASTRO,
EDGARDO AVILA,
JOSE A. CABRERA,
PORFIRIO VARELA,
ERMIN TALAVERA,

Plaintiffs-Appellants,

versus

BAKER CONCRETE CONSTRUCTION, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 30, 2007)**

Before BLACK, BARKETT AND KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

This case concerns whether time workers spent traveling on employer-provided transportation to a secure construction site or time spent going through security screening is compensable under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Appellants Percy Bonilla, *et al.* ("appellants"), plaintiffs in the underlying dispute, appeal the district court's summary judgment order in favor of appellee-defendant, Baker Concrete Construction, Inc. ("appellee"). After careful consideration of the briefs, oral argument, and evidence in the record, we **AFFIRM** the district court's order.

## I. BACKGROUND

Appellants were construction workers employed by appellee, a subcontractor for the lead contractor Turner-Austin, for the North Terminal project at Miami International Airport ("MIA project") from approximately November 2001 until March 2003.[1]

In order to reach their work sites inside the airport, appellants were required

---

[1] The district court granted summary judgment to appellee regarding Plaintiff Jose Cabrera on the ground that Cabrera was never employed by appellee nor had any joint employer relationship. This ruling is not appealed.

2

to pass through a single security checkpoint to the tarmac and then ride authorized buses or vans to their particular work site. Because FAA regulations prohibit unauthorized vehicles in the secured tarmac area, Turner-Austin provided free buses or vans to transport appellants and other workers from the free employee parking lot to the security gate and on through to each of the separate work sites. Appellants were not required to park at the employee lot, but they were required to enter the facility through the single authorized security entrance and then ride the contractors' authorized vehicles to the various work sites. The security gate was near other public parking lots and a public bus stop; appellants were free to meet the authorized vehicle at the security gate rather than at the employee parking lot several miles away. Riding Turner-Austin's authorized vehicles was the only way for the workers to access the construction sites after passing through the security gate.

The employees did not perform any labor while waiting for or riding the vehicles, either at the beginning or end of each work day. No instructions were given by the supervisors nor were any tools carried on the buses because the tools were kept at the work sites. Appellants signed in at the work site and then received their instructions for the day. At the end of the day, appellants would sign out before boarding the bus to leave the airport through the security gate.

Although appellants claim that appellee or Turner-Austin supervisors did work on the vehicles and at the security gate (head counts and general supervision), appellants do not claim that they had any responsibilities or duties before arriving at their respective sites other than to show their identification at the security gate and carry their personal safety equipment, including safety goggles, a hard hat, and work boots. Appellants point to the contractors' agreement with the airport, the Construction Related Requirements ("CRR"), that requires all employees to display their personal safety equipment as a condition of being transported to the job site. Appellee disputes appellants' claim that there was any evidence that employees were required to carry their personal safety equipment on the bus.

Appellants were not paid by appellee for the time spent riding the buses or vans. There were no allegations that appellee, Turner-Austin, or any representative of appellee ever discussed with appellants whether they would be paid for the time waiting for or riding the authorized buses, nor were there any requests by appellants to be paid for this time.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. Gibson v. RTC, 51 F.3d 1016, 1020 (11th Cir. 1995). This appeal presents a question of

4

statutory interpretation.  Section 4(a) of the Portal-to-Portal Act, 29 U.S.C.

§ 254(a), exempts certain activities from compensation under the FLSA, 29 U.S.C.

§§ 201 *et seq*.  The question before us is whether appellants' time spent riding the

buses or going through airport security constitutes such an exception.  The Act

exempts the following activities from compensation:

> (1) walking, riding, or traveling to and from the actual place of performance
> of the principal activity or activities which such employee is employed to
> perform, and
> (2) activities which are preliminary to or postliminary to said principal
> activity or activities,
> which occur either prior to the time on any particular workday at which such
> employee commences, or subsequent to the time on any particular workday
> at which he ceases, such principal activity or activities....

29 U.S.C. § 254(a).[2]

Under the plain meaning of section 254(a), this case pivots on whether

appellants are engaging in any work-related activity before arriving at their work

sites inside the airport tarmac.  If appellants were merely traveling to their "actual

place of performance of the principal activit[ies]" before beginning any work

activity, then section 254(a)(1) exempts such traveling from compensation under

the FLSA.  But, if appellants, by boarding those buses, going through security, or

---

[2] The terms of § 254(a) are limited by § 254(b), which allows compensation provided by contract or custom.  But the only evidence that appellants point to regarding custom is the CRR, which requires workers to have identification and prohibits unauthorized vehicles within the airport.  The CRR does not amount to a contract or custom that would limit the effect of § 254(a).  Appellants do not assert that § 254(b) applies either.

5

carrying their personal safety equipment, are engaging in work-related activity that is "integral and indispensable" to their work, then any travel afterwards is compensable. IBP, Inc. v. Alvarez, 546 U.S. 21, 37, 126 S. Ct. 514, 525 (2005) ("[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under [29 U.S.C. § 254(a)] of the Portal-to-Portal Act. Moreover, during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity is excluded from the scope of the provision, and as a result is covered by the FLSA.").

*a) Travel Claim*

The district court found that it is "undisputed that the actual place of performance of the principal activity or activities which [appellee] employed [appellants] to perform was the Project jobsite at MIA's North Terminal," and that it "is also undisputed that [appellants] did not perform any work either when waiting for the buses or while they were riding the buses." We find nothing in the record to contradict this conclusion. As stated above, the parties disagree as to whether appellants were required to carry their personal safety gear on the buses. But we do not find this dispute to be material to the issue at hand because our analysis of the Portal-to-Portal Act would be the same regardless. See Danskine v. Miami Dade Fire Dep't, 253 F.3d 1288, 1292-93 (11th Cir. 2001) ("A factual

6

dispute is genuine only if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party.") (internal quotations and citation omitted).

The Department of Labor has issued interpretive statements giving examples of non-compensable travel under § 254(a). These statements are not promulgated regulations because Congress did not authorize the Secretary of Labor to issue regulations regarding the scope of the exemptions. 29 C.F.R. § 790.1(c); see Gonazales v. Oregon, 126 S. Ct. 904, 914-15 (2006) ("Deference in accordance with Chevron, however, is warranted only when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.") (citation and quotation omitted).

Here, however, the illustrative examples are persuasive and should be given due deference. See Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 164 (1944) ("[R]ulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the

validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").  In this case, the DOL's interpretation of § 254(a) speaks directly to the issue at hand:

> Examples of walking, riding, or traveling which may be performed outside the workday and would normally be considered "preliminary" or "postliminary" activities are (1) walking or riding by an employee between the plant gate and the employee's lathe, workbench or other actual place of performance of his principal activity or activities; (2) riding on buses between a town and an outlying mine or factory where the employee is employed; and (3) riding on buses or trains from a logging camp to a particular site at which the logging operations are actually being conducted.

29 C.F.R. § 790.7(f).

The plain language of section 254(a)(1) excludes "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities."  The appellants' claim regarding the time spent on the employer vehicles both before and after the security check point fits squarely within this statutory exception, and the administrative interpretation of the statute also specifically addresses the question of transportation to and from the work site. The fact that the workers were required to ride authorized transportation after the security gate but the transportation to the security gate was optional is not relevant to the outcome of this case because even mandatory travel time is exempted from compensation under the Portal-to-Portal Act.   We therefore hold that the time

appellants spent traveling on the vehicles both before and after the security check point is exempt from compensation under the FLSA.[3]

*b) Security Screening Claim*

Unlike the time spent riding the employer vehicles, the time appellants spent going through airport security is not exempted under § 254(a)(1), so we must determine if this security screening is exempted under another provision.[4] Section 254(a)(2) exempts "activities which are preliminary to or postliminary to said principal activity or activities." The Supreme Court has interpreted this section to apply when an activity before or after the principal work activity is not an "integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section [254(a)(1)]."

---

[3] Circuits which have addressed the issue concur. See Smith v. Aztec Well Servicing Co., 462 F.3d 1274 (10th Cir. 2006) (holding that gas-drillers in New Mexico were exempt from FLSA compensation for travel that ranged from thirty minutes to three-and-a-half hours each way); Reich v. New York City Transit Auth., 45 F.3d 646, 651 (2d Cir. 1995) (holding that dog handlers' commutes are not compensable just because they bring their dogs into work, and also noting that the Portal-to-Portal Act exemptions "properly protect employers from responsibility for commuting time and for relatively trivial, non-onerous aspects of preliminary preparation, maintenance and clean up"); Vega v. Gasper, 36 F.3d 417 (5th Cir. 1994) (holding that the four hours workers spent traveling on their employer's bus each day was not compensable under the Act); and Ralph v. Tidewater Constr. Corp., 361 F.2d 806 (4th Cir. 1966) (holding that time workers spent traveling on an employer's boat to a construction site was not compensable under the Act).

[4] The district court specifically ruled that time spent in security screening was not compensable under the FLSA, and the appellants appealed the court's order regarding the contested traveling time, which logically includes the entire time spent in security screening.

9

Steiner v. Mitchell, 350 U.S. 247, 256, 76 S. Ct. 330, 335 (1956).

The former Fifth Circuit analyzed several factors to determine whether preliminary or postliminary activities are so "integral and indispensable" as to be compensable. Dunlop v. City Elec., Inc., 527 F.2d 394, 398-400 (5th Cir. 1976).[5] The factors to be considered are: (1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer. Id. at 401. In this case, the screening was required by the FAA, and appellee had no discretion as to whether its employees would be screened. See 49 C.F.R. § 1540.17; see also Civil Aviation Security Rules, 67 Fed. Reg. 8340 at 8354 (Feb. 22, 2002). So although the screening was necessary for the employees to perform their work, appellee did not primarily—or even particularly—benefit from the security regime.

Appellants place great weight on the necessity of going through the screening in order to do their jobs. But the "integral and indispensable" test is not a but-for test of casual necessity. "[T]he fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that

_____

[5] The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. See Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

10

those preshift activities are 'integral and indispensable' to a 'principal activity' under Steiner." IBP, 546 U.S. at 40-41, 126 S. Ct. at 518. If mere causal necessity was sufficient to constitute a compensable activity, all commuting would be compensable because it is a practical necessity for all workers to travel from their homes to their jobs. If the Portal-to-Portal Act is to have any meaning at all, its terms cannot be swallowed by an all-inclusive definition of "integral and indispensable."[6]

In IBP, the Supreme Court addressed whether the time spent waiting to don protective clothing on the employer's premises before engaging in productive labor was compensable under the Portal-to-Portal Act. IBP, 546 U.S. at 24, 126 S. Ct. at 518. The Court held, in part, that the time workers spent waiting to don protective gear necessary for productive labor was not itself "integral and indispensable" to a "principal activity." IBP, 546 U.S. at 42, 126 S. Ct. at 528.

This circuit has not interpreted the Portal-to-Portal Act in a published

---

[6] The legislative history of the Portal-to-Portal Act underscores the scope of the exemptions from compensation. In 1946, the Supreme Court decided Anderson v. Mt. Clemens Pottery Co., holding that employees were entitled to compensation for the time they spent walking from the time clock to the workstation. 328 U.S. 680, 690-91, 66 S. Ct. 1187, 1194 (1946). The year after Anderson was decided, Congress passed the Portal-to-Portal Act specifically exempting travel time—even within the employer's premise—from FLSA compensation requirements when the workers had not yet engaged in productive activity. See IBP, 546 U.S. at 26, 126 S. Ct. at 519.

11

opinion since the Supreme Court decided <u>IBP</u>.[7] The statutory language of the

exemptions does not allow for a clean analytical distinction between those

activities that are "integral and indispensable" and those that are not. But it is

---

[7] Appellants rely on an unpublished decision of this court interpreting the Portal-to-Portal Act. <u>Burton v. Hillsborough County</u>, 181 Fed. Appx. 829 (11th Cir. 2006) (unpublished). Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants. <u>See</u> <u>United States v. Rodriquez-Lopez</u>, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004). <u>Burton</u> is not persuasive because its facts are materially different from this case.

In <u>Burton</u>, the county employees' duties required them to drive the county vehicles to and from various public works locations and to always return the county vehicle to a secured county facility overnight. This court found that the time the employees spent driving from the secured county location to the various work sites was compensable under the FLSA because picking up and delivering the county vehicles to the county lots was integral and indispensable to the employees' principal activities. <u>Burton</u>, 181 Fed. Appx. at 837. In addition, <u>Burton</u> found that the vehicles served as satellite offices for those employees to do their jobs at the various sites and tools necessary for the work were locked in the county vehicles. <u>Id</u>. In <u>Burton</u>, driving the vehicles was not merely part of the employees' commute to the principal place of performance but rather an aspect of that job performance.

Furthermore, <u>Burton</u> concerned the interpretation of an amendment to the Act not relevant to this case. <u>Burton</u> examined the Employee Commuting Flexibility Act of 1996, which amended the Portal-to-Portal Act by adding the following language:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

Although the <u>Burton</u> court applied the same "integral and indispensable" analysis that is at issue here, <u>Burton</u>'s conclusion that the time spent by the employees driving their county vehicles is compensable does not support the same conclusion in this case. Not only are the relevant facts in <u>Burton</u> easily distinguishable, we emphasize that as an unpublished case, <u>Burton</u>'s analysis does not bind us.

clear to us from the Act's language and history that the activity in question must be work in the benefit of the employer, and that the security screening mandated by the FAA in this case is not compensable work.  We therefore hold that the time appellants spent going through the mandatory security screening is not compensable under the FLSA because that screening is not "integral and indispensable" to a principal activity under IBP, Steiner, or Dunlop.

## IV.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment in this case.

13

BLACK, Circuit Judge, concurring:

I concur in the result. I agree that the Appellants are not entitled to compensation for the nonmandatory time spent traveling from the parking lot to the security checkpoint. They are also not entitled to compensation for the mandatory time spent from the security checkpoint to their official job sites.