JILL PRYOR, Circuit Judge,
with whom WILSON, MARTIN, and ROSENBAUM, Circuit Judges, join, dissenting from the denial of rehearing en banc:
I join in full Judge Martin’s thorough and thoughtful dissent. I write separately to add an observation about the incentives we create for police officers, and the guidance we provide for district courts, when we cloak fast-acting officers with qualified immunity based on unreasonably escalated circumstances that they alone create.
Even though Andrew Scott was not a suspect in any crime, Deputy Richard Sylvester and his fellow officers — with no reasonable justification for doing so — assumed tactical positions partially obscured from view, with guns drawn, at .Mr. Scott’s apartment door in the middle of the night and pounded loudly and insistently on the door without announcing themselves. Mr. Scott, understandably startled, came to the door with his gun in his hand, ready to defend himself if necessary. What transpired between the moment the door cracked open and the moment Deputy Sylvester fatally shot Mr. Scott spanned no more than three seconds. Viewing the evidence in the light most favorable to Mr. Scott, he, with his gun pointed at the floor, had time only to open his door and then quietly begin to retreat inside before Deputy Sylvester fired three bullets into his body, killing him.
Deputy Sylvester and his fellow officers created a situation in which anyone they would confront behind that door would feel panicked. There was absolutely no objectively reasonable justification for this escalation by the officers, as Judge Martin explains in her dissent. The district court nonetheless held, based on the “totality of the[se] circumstances,” that “it was not unreasonable for Sylvester to believe that his life was in danger in the instant the door opened and to immediately take action in self-defense.” Summary Judgment Ord., Doc. 73 at 32 (emphasis added).[1] The panel, without any additional explanation, agreed. I cannot. When police unilaterally manufacture alarm and urgency that the situation at hand clearly does not warrant, the law does not — and must not — grant them qualified immunity for a deadly split-' second decision.
To be sure, in analyzing an officer’s entitlement to qualified immunity we must view the situation from the eyes of a reasonable officer “on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction,” Crosby v. Monroe Cty., 394 F.3d 1328, 1334 (11th Cir. 2004) (emphasis added), in “circumstances that are tense, uncertain, and rapidly evolving,” Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). But here, Deputy Sylvester almost certainly would have avoided a forced split-second deadly decision had he and his fellow officers not unreasonably contrived the tense, uncertain, and rapidly evolving circumstances at Mr. Scott’s door.
I also am wholly unconvinced by the district court’s reasoning that “Sylvester knew that the motorcyclist who had eluded *1301 him might be armed” so “[i]t was therefore reasonable for him to believe in that split second that Scott might indeed be the motorcyclist whom the officers sought because when Scott opened the door Sylvester saw a man holding a gun.” Doc. 73 at 32-33. Construing the evidence in the light most favorable to Mr. Scott, any “knowledge” Deputy Sylvester had about whether the motorcyclist who sped past him earlier in the night was armed was nothing more than a hunch. Earlier, an armed assault and battery suspect had driven a motorcycle. Sometime later, about five miles away, Deputy Sylvester saw a motorcycle speed by in the dark. Deputy Sylvester testified that he could not identify the make, model, or color of the speeding motorcycle. Neither Deputy Sylvester nor any other officer identified any shared characteristic between the first motorcycle or driver and the second. It borders on meaningless to say that Deputy Sylvester “knew” that the speeding motorcyclist “might be armed.”
Moreover, it defies logic to extrapolate from Deputy Sylvester’s mere speculation about the connection between these two incidents that he reasonably identified Mr. Scott as this criminal motorcyclist from earlier in the night. Mr. Scott had a gun. So too does approximately one in three American households. See Scott Horsley, Guns in America, by the Numbers, NPR (Jan. 5, 2016), http://www.npr.org/2016/01/ 05/462017461/guns-in-america-by-the-numbers. By Deputy Sylvester’s oto testimony, there was nothing that linked Mr. Scott to the crimes Deputy Sylvester was investigating.[2] How could it have been objectively reasonable for the mere presence of a handgun, a common household item, to trigger the identification on which the district court relied? Would Deputy Sylvester have been justified in assuming that any person who happened to appear at his door with a gun — in the middle of the night, in response to a jarring pounding on the door — was the perpetrator about whom he was seeking information? I can hardly imagine a shakier foundation upon which to base the split-second use of deadly force.
We have never before held that police can, without justification, provoke a panic, and then hide behind it by claiming .that “everything happened fast.” Deposition of Deputy Sylvester, Doc. 50-2 at 111.[3] Nor should we now. Deputy Sylvester and his fellow officers say they were approaching Mr. Scott as a member of the community, not as a known criminal or even a suspect or person of interest. Indeed, in Deputy Sylvester’s own words, the officers merely intended to “knock[] on that door.... to get information.” Id. at 118. The mere fact that Mr. Scott answered the door with a lawfully carried gun at his side could not reasonably have changed the officers’ ap *1302 proach once they laid eyes on him. Instead of setting up such a show of force that the neighbors perceived the event as a raid and then reacting immediately to the sight of Mr. Scott with the use of deadly force, reasonable officers should have proceeded slowly and deliberately with their original plan. ,
The panel stamps a seal of approval on the district court’s theory that, because everything happened so fast, the officers’ actions were reasonable. I am deeply troubled by an analysis that rewards officers with qualified immunity when they move faster, rather than slower, in circumstances that do not in and of themselves warrant a vertiginous tactical approach. It simply cannot be that where, as here, the facts we must credit demonstrate that the officers alone created urgency and escalated the situation to an approach akin to a raid, without any reasonable justification, those very circumstances entitle the officers to qualified immunity.[4]
Respectfully, I dissent from the denial of rehearing en banc.

. I refer to numbered entries on the district court’s docket as "Doc.”

. The concurrence makes much of the fact that a motorcycle and another vehicle registered to the same owner with an address in a different city were parked in front of the door to Mr. Scott's apartment. But the officers conceded that Mr. Scott was not a suspect. Nothing prevented the officers from approaching Mr. Scott's door to conduct a routine knock and talk to obtain information about the motorcycle parked nearby. But as I describe here and as Judge Martin explains in detail in her dissent, Deputy Sylvester’s conduct far exceeded the scope of a proper knock and talk.

. I would have a very different view of this case under different facts. If the officers had conducted a true knock and talk and Mr. Scott had lunged out the door wielding a gun, Deputy Sylvester very well may have been entitled to qualified immunity for his use of deadly force. He also may have been entitled to qualified immunity if the undisputed facts demonstrated that Mr. Scott's actions contributed to the "tense, uncertain, and rapidly evolving” circumstances. Graham, 490 U.S. at 397, 109 S.Ct. 1865. But neither is the case here.

. I hope that district courts will not draw such a conclusion from the panel's decision. Although unpublished opinions from this Court are non-precedential, I recognize that, for practical purposes, they provide guidance for our district courts even though they are not binding authority. But the panel’s decision here, like all unpublished decisions, is “persuasive only insofar as [its] legal analysis warrants.” Bonilla v. Baker Concrete Constr., Inc., 487 F.3d 1340, 1345 n.7 (11th Cir. 2007). District courts may consider whether the panel's legal analysis is persuasive. In my view, it isn’t.