[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10616
_____

D.C. Docket No. 2:15-cv-00017-PAM-CM

CARLO LLORCA, an individual,

Plaintiff-Appellant,

versus

SHERIFF, COLLIER COUNTY, FLORIDA,

Defendant-Appellee.

-------------------------------------------------------------------------------------------------

_____

No. 17-11377
_____

D.C. Docket No. 2:14-cv-00519-PAM-CM

KEVIN CALDERONE, an individual,
GEORGE SCHWING, an individual,
MICHAEL ZALESKI, an individual,
and SELENA LEE, an individual,

Plaintiffs-Appellants,

versus

MICHAEL SCOTT, as the duly elected
Sheriff of Lee County, Florida,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(June 27, 2018)

Before JILL PRYOR, ANDERSON, and HULL, Circuit Judges.

ANDERSON, Circuit Judge:

Plaintiffs-Appellants, former sheriff deputies in Collier and Lee County, Florida, sued the Collier and Lee County sheriffs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110. The deputies claim that the sheriffs violated the overtime provisions in the FLSA and the minimum wage provisions in the FMWA by failing to compensate them for time spent: (1) donning and doffing police gear; and (2) driving to and from work in marked patrol vehicles. The district court granted summary judgment in favor of the sheriffs. This is the deputies' appeal. As discussed below, the deputies are not entitled to compensation under the FLSA or the FMWA for the time that they spent donning and doffing police gear or the time that they spent driving to and from work in marked patrol vehicles. Accordingly, we affirm the judgment of the district court.[1]

_____

[1] We consolidate the above captioned cases for purposes of this appeal. Because the deputies are not entitled to compensation for any of the time for which they claim that they were

2

## I.    STANDARD

"We review a district court's order granting summary judgment de novo."

Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1455 (11th Cir. 1997) (per

curiam). "We view the record, and all reasonable inferences therefrom, in the light

most favorable to the nonmoving party." Id. Summary judgment is appropriate "if

the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II.    BACKGROUND

Carlo Llorca worked as a road patrol deputy with the Collier County

Sheriff's Office. The named Lee County Plaintiffs worked as follows: Kevin

Calderone worked as a road patrol deputy and as a detective; George Schwing

worked as a road patrol deputy; Michael Zaleski worked as a detective; and Selena

Lee worked as a traffic unit deputy. The Collier and Lee County sheriffs required

all deputies to arrive for their shifts wearing a uniform and the following protective

gear: a "duty belt," a radio case, pepper mace, a baton strap, a magazine pouch, a

radio, a flashlight, handcuffs, a holster, a first-responders pouch, and a ballistics

vest. The deputies were allowed to, and actually did, don and doff this protective

gear at home. They contend that the donning and doffing process took a total of

---

not paid minimum wage, we do not address their argument that the district court erred by
applying a work period averaging method to deny their FMWA claims.

thirty minutes per shift. The sheriffs did not pay the deputies for the time that they spent donning and doffing the protective gear.

The deputies also commuted to and from work in marked patrol vehicles. The sheriffs required the deputies to have their radios on during the commute, listen to calls in the district through which they were driving, and respond to major calls and emergencies. Additionally, the sheriffs required deputies who commuted in marked patrol vehicles to observe the roads for traffic violations and engage in general traffic law enforcement during their commutes.[2] The sheriffs compensated the deputies for any time that the deputies spent responding to calls or emergencies or actually enforcing traffic laws during their commutes. The sheriffs did not compensate road patrol deputies or detectives for the time that those deputies spent driving, listening to their radios, and observing the roads for traffic law violations.[3]

---

[2] There appear to be issues of fact regarding whether the sheriffs' policies required all Plaintiffs to be on the lookout for all traffic violations, as opposed to only looking out for flagrant violations, during their commutes. The Lee County Sheriff's Office Operations Manual provides: "While off-duty, personnel are not expected to be strict traffic infraction enforcers. However, they must not ignore flagrant violations which endanger life and/or property or could bring disrepute on the Office." But the Collier County Sheriff's Office Operations Manual does not appear to limit traffic enforcement during commutes to observing the roads for flagrant violations. Moreover, despite the Lee County provision, all of the named Lee County Plaintiffs who were allegedly not paid for commute time claim that they were required to observe the roads for all traffic violations and enforce the laws against even minor violators during their commutes. We assume for purposes of this appeal that all Plaintiffs were required to observe the roads for all traffic violations during their commutes.

[3] The Lee County Sheriff paid deputies in the traffic unit from the time that those deputies left their homes until the time that they returned home after a shift. One of the named

4

### III.    DISCUSSION

In 1938, the FLSA established minimum wage and overtime compensation at one and one-half times the employee's regular rate of pay for hours over a certain number per pay period. 29 U.S.C. §§ 206(a), 207; Integrity Staffing Sols., Inc. v. Busk, 135 S. Ct. 513, 516, 190 L. Ed. 2d 410 (2014). Shortly after, the Supreme Court broadly "defined 'work' as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" Integrity Staffing, 135 S. Ct. at 516 (quoting Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598, 64 S. Ct. 698, 703, 88 L. Ed. 949 (1944)). "Similarly, it defined 'the statutory workweek' to 'includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace.'" Id. (alteration in original) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 690–91, 66 S. Ct. 1187, 1194, 90 L. Ed. 1515 (1946)). Applying these definitions, the Court held that time spent traveling between mine portals and underground work areas and time spent walking from time clocks to work benches was compensable, initiating a "flood of litigation." Id.

---

Lee County Plaintiffs, Selena Lee, worked in the traffic unit. Accordingly, Lee does not assert any claims based on a failure to pay her for time spent driving to and from work.

5

Congress responded in 1947 with the Portal–to–Portal Act. Congress "found that the FLSA had 'been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers.'" Id. at 516–17 (quoting from the findings of Congress in 29 U.S.C. § 251(a)). The Portal–to–Portal Act, as amended by the Employee Commuting Flexibility Act of 1996, provides:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities . . .
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is

6

subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a). The Supreme Court has long interpreted the term "principal activity or activities" in § 254 to include all activities that are an "integral and indispensable part of the principal activities." Steiner v. Mitchell, 350 U.S. 247, 256, 76 S. Ct. 330, 335, 100 L. Ed. 267 (1956).

For purposes of determining which activities are integral and indispensable, we agree with the Second Circuit that "'[i]ndispensable' is not synonymous with 'integral.'" Gorman v. Consol. Edison Corp., 488 F.3d 586, 592 (2d Cir. 2007). Both the Supreme Court and this Court have previously held as much. See IBP, Inc. v. Alvarez, 546 U.S. 21, 40–41, 126 S. Ct. 514, 527, 163 L. Ed. 2d 288 (2005) ("[T]he fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity' under Steiner."); see also Bonilla v. Baker Concrete Const., Inc., 487 F.3d 1340, 1344 (11th Cir. 2007) (quoting that language from IBP, Inc. v. Alvarez, and adopting the same). Moreover, in Integrity Staffing, the Supreme Court separately defined the words "integral" and "indispensable" as follows. "The word 'integral' means '[b]elonging to or making up an integral whole; constituent, component; spec[ifically] necessary to the completeness or integrity of the whole; forming an intrinsic portion or element, as distinguished from an adjunct or appendage.'" Integrity Staffing, 135 S. Ct. at 517

7

(alterations in original) (quoting 5 Oxford English Dictionary 366 (1933) (OED)). "'[I]ndispensable' means a duty '[t]hat cannot be dispensed with, remitted, set aside, disregarded, or neglected.'" Id. (alterations in original) (quoting 5 OED 219). "An activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." Id.

"The integral and indispensable test is tied to the productive work that the employee is employed to perform." Id. at 519. Thus, the fact that an employer requires or benefits from the activity at issue does not establish that the activity is integral and indispensable. Id. "If the test could be satisfied merely by the fact that an employer required [or benefitted from] an activity, it would sweep into 'principal activities' the very activities that the Portal–to–Portal Act was designed to address." Id.

Thus, § 254(a), Integrity Staffing, IBP, Inc. v. Alvarez, and Bonilla establish for this Circuit that commuting time and other preliminary and postliminary activities are compensable only if they are both an integral and indispensable part of the principal activities. The inquiry is fact-intensive and not amenable to bright-line rules. Nevertheless, whether a particular set of facts and circumstances is compensable under the FLSA is a question of law for the Court to decide. Dade

8

Cty. v. Alvarez, 124 F.3d 1380, 1383 (11th Cir. 1997) ("[I]t is for the court to determine if a set of facts gives rise to liability [under the FLSA]; it is for the jury to determine if those facts exist." (quoting Birdwell v. City of Gadsden, 970 F.2d 802, 808 (11th Cir. 1992))).

    A.  The Deputies Are Not Entitled to Compensation for Time Spent Donning and Doffing Protective Gear

Even though donning and doffing protective gear may arguably be "indispensable," we hold that it is not "integral" to the deputies' principal activities. An "integral" activity "form[s] an intrinsic portion or element [of the principal activities], as distinguished from an adjunct or appendage." Integrity Staffing, 135 S. Ct. at 517 (quoting 5 OED 366). The deputies' principal activities are law enforcement duties—i.e., enforcing traffic laws, responding to emergencies, conducting investigations, and generally engaging in crime prevention. The gear is arguably indispensable in the sense that the deputies cannot dispense with the gear if they are to perform their principal activities. But the mere fact that the deputies must go through the activity of donning and doffing the gear in order to have it available when they are on duty does not make the donning and doffing process an intrinsic element of law enforcement. See Gorman, 488 F.3d at 594 ("[A] helmet, safety glasses, and steel-toed boots may be indispensable to plaintiffs' principal activities without being integral. The donning and doffing of such generic protective gear is not different in kind from 'changing clothes and

9

showering under normal conditions,' which, under <u>Steiner</u>, are not covered by the FLSA." (footnote omitted) (quoting <u>Steiner</u>, 350 U.S. at 249, 76 S. Ct. at 332)). Here, donning and doffing is an entirely separate activity from the deputies' principal law enforcement duties. We therefore conclude that the donning and doffing in these cases is a preliminary and postliminary activity as contemplated by § 254(a). <u>See</u> <u>Bonilla</u>, 487 F.3d at 1344–45 (holding that the time that airport construction workers spent going through a mandatory security screening, although necessary, was not compensable).

This conclusion finds support in the purpose of the Portal–to–Portal Act. As the Supreme Court set out in <u>Integrity Staffing</u>, in passing the Portal–to–Portal Act, "[Congress] found that the FLSA had 'been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers.'" 135 S. Ct. at 516–17 (quoting 29 U.S.C. § 251(a)); <u>IBP</u>, 546 U.S. at 26, 126 S. Ct. at 519 (recognizing that the Portal–to–Portal Act is "[b]ased on findings that judicial interpretations of the FLSA had superseded 'long-established customs, practices, and contracts between employers and employees . . .'" (quoting 29 U.S.C. § 251(a))). Thus, it is clear that the purpose of the Portal–to–Portal Act was to abrogate the earlier Supreme Court decisions that had interpreted the FLSA "in disregard of long-established customs,

10

practices, and contracts between employers and employees." Integrity Staffing, 135 S. Ct. at 516 (quoting 29 U.S.C. § 251(a)). Donning and doffing uniforms and protective gear at home has never been considered work time. Thus, to hold that such time is compensable would "disregard . . . long-established customs," the exact result that the Portal–to–Portal Act was meant to prevent. Id.

Our position also finds persuasive support in the Department of Labor (DOL) regulations and a May 31, 2006 memorandum.[4] The regulations provide that, "when performed under the conditions normally present," changing clothes is among the "preliminary" or "postliminary" activities referred to in § 254(a). 29 C.F.R. § 790.7(g). In order for such an activity to be compensable, it must "be so directly related to the specific work the employee is employed to perform that it would be regarded as an integral part of the employee's 'principal activity.'" Id. § 790.7(g) n.49. "If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral

---

[4] DOL interpretations of the FLSA and the Portal–to–Portal Act are not binding on this Court but may be considered to the extent that the Court finds the interpretations persuasive. See Bonilla, 487 F.3d at 1342–43; see also Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 164, 89 L. Ed. 124 (1944) ("[R]ulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

part of the employee's principal activity." Id. § 790.8(c). "Such a situation may exist where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work." Id. § 790.8(c) n.65. Consistent with these regulations, the May 31, 2006 memorandum provides: "It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant." Wage and Hour Adv. Mem. No. 2006-2 (May 31, 2006).

The deputies here were allowed to don and doff their protective gear at home and actually did so. There may be circumstances in which donning and doffing at home is so closely related to an employee's principal activities that it is integral and indispensable to those activities and therefore compensable. However, the DOL has indicated that, generally, donning and doffing at home is akin to changing clothes under normal conditions and thus not compensable. We conclude that the position of the DOL is persuasive; it is reasonable, is consistent with the agency's long-established position and is consistent with the purpose of the Portal–to–Portal Act. The deputies here do not point to any circumstances that make the donning and doffing at home in these cases particularly related to their law enforcement duties other than the necessity of the protective gear to their job performance. As noted above, the fact that the deputies need their protective gear

12

in order to perform their principal activities is insufficient to establish that the donning and doffing process is an intrinsic part of their principal law enforcement duties. See Bonilla, 487 F.3d at 1344 (rejecting the employees' argument based on "the necessity of going through the screening in order to do their jobs" because the "'integral and indispensable' test is not a but-for test of causal necessity").

Finally, we conclude that the reliance placed by Plaintiffs on Steiner is misplaced. The donning and doffing issue faced by the Supreme Court there is vastly different from the issue in our cases. In Steiner, the battery plant workers used "dangerously caustic and toxic materials" and were "compelled by circumstances, including vital considerations of health had [sic] hygiene, to change clothes and to shower in facilities which state law [and the employer's insurer] require[d] their employer to provide." 350 U.S. at 248, 76 S. Ct. at 331. The Ninth Circuit in Bamonte v. City of Mesa, 598 F.3d 1217 (9th Cir. 2010), addressed the donning and doffing at home of the uniform and gear of law enforcement officers and reached the same result that we do. See id. at 1232–33.[5]

For all these reasons, we conclude that the donning and doffing at home of the deputies in our cases was not compensable under the FLSA.

_____

[5] The Second Circuit case Perez v. City of New York, 832 F.3d 120 (2d Cir. 2016), is distinguishable because the urban park rangers there were required to don and doff their uniforms and protective gear at the workplace. Id. at 125. To the extent that Perez suggests that donning and doffing under the circumstances of our cases would be compensable, we respectfully disagree for the reasons set forth in this opinion.

B. The Deputies Are Not Entitled to Compensation for Time Spent Commuting in Marked Patrol Vehicles

The time that the deputies spent commuting in marked patrol vehicles is excluded from compensable work time by the Portal–to–Portal Act. The plain language of § 254(a)(1) indicates that commute time is generally not compensable. Even more importantly, the statute expressly addresses the situation in which an employee commutes in an employer's vehicle and provides that "[f]or purposes of this subsection, . . . activities performed by an employee which are incidental to the use of [an employer's] vehicle for commuting shall not be considered part of the employee's principal activities." 29 U.S.C. § 254(a). For the following reasons, we conclude that the activities required of the deputies during their commutes in these cases are incidental.

It would undermine law enforcement if marked patrol cars, driven by uniformed officers, routinely passed by accidents, disabled vehicles, flagrant safety violations, or even routine traffic violations. It is a matter of common experience that traffic violations multiply if there is an appearance among the public that traffic enforcement is lax. Thus, it would be highly inappropriate for uniformed officers to drive to and from work in marked patrol vehicles without observing the roads for traffic violations and other incidents. We believe that this means that such activities are incidental to the very use of the marked patrol vehicle. Thus, we conclude that such activities easily fall within the meaning of the statutory phrase:

14

"For purposes of this subsection, . . . activities performed by an employee which are incidental to the use of [an employer's] vehicle for commuting shall not be considered part of the employee's principal activities." Id.[6]

The DOL has issued a regulation regarding commuting in marked law enforcement vehicles that provides some additional support for our position. According to the DOL:

> A police officer, who has completed his or her tour of duty and who is given a patrol car to drive home and use on personal business, is not working during the travel time even where the radio must be left on so that the officer can respond to emergency calls.

29 C.F.R. § 553.221(f). We find that this regulation is persuasive because it is a reasonable interpretation of the statutory provision regarding activities incidental to commuting in an employer's vehicle. Under this regulation, the deputies are not entitled to compensation for their commute time simply because the sheriffs

---

[6] Plaintiff Llorca also points out that the Collier County Sheriff required him to perform a safety inspection of his vehicle and test his radar equipment before and after each shift. But in his brief on appeal, Llorca merely mentions this in his statement of the facts; he does not rely on it as evidence that his commute time was compensable. Moreover, the legislative history of the "[f]or purposes of this subsection . . ." provision indicates that such activities are properly characterized as incidental. H.R. Rep. No. 104-585, at 5 (1996) ("[R]outine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable."). Thus, we conclude that these activities are easily classified as incidental.

Llorca also argues that an issue of fact exists as to whether the Collier County Sheriff had a custom or practice to compensate deputies for commute time because a deceased deputy who was killed while commuting was treated as having been in the line of duty so as to qualify for a benefit to be paid to his family. We reject Llorca's argument; considering a deputy who was commuting to have been in the "line of duty" for purposes of the death benefit does not establish a custom or practice of compensating deputies for commute time.

15

required them to monitor their radios during the commute. This leaves only the deputies' argument that their commute time is compensable because the sheriffs required them to monitor the roads for traffic violations during their commutes. We reject that argument for the reasons stated above.

Moreover, even if monitoring the roads for traffic violations during their commutes were integral to the deputies' principal activities (which we do not believe it is), it is not indispensable. An "indispensable" activity is one with which an employee cannot dispense "if he is to perform his principal activities." Integrity Staffing, 135 S. Ct. at 517. Monitoring traffic violations during commutes could be dispensed with without affecting at all the deputies' performance of their law enforcement duties during their shifts. While it would undermine law enforcement generally to have uniformed officers ignoring traffic law violations during their commutes, the individual deputies could fully perform their law enforcement duties during their shifts even if the sheriffs did not require them to engage in traffic law enforcement during their commutes. Thus, performing general traffic law enforcement during their commutes is not indispensable to the deputies' performance of their principal activities.

Lastly, our conclusion regarding the deputies' commute time finds persuasive support in cases from sister circuits. The Federal and Sixth Circuits have held that law enforcement officers are not entitled to compensation for

16

commuting in marked patrol vehicles, even if the officers are required to monitor their radios and, in the case of the Sixth Circuit, observe the roads for emergencies during their commutes. Adams v. United States, 471 F.3d 1321, 1327–28 (Fed. Cir. 2006); Aiken v. City of Memphis, 190 F.3d 753, 759 (6th Cir. 1999). The Ninth and Second Circuits have found similar commutes non-compensable. Rutti v. Lojack Corp., 596 F.3d 1046, 1054 (9th Cir. 2010) (holding that an alarm installation technician was not entitled to compensation for the time he spent driving an employer owned vehicle from his home to his first installation even though the employer required the technician to drive straight to and from work, avoid carrying passengers, and have his cell phone on during his commute); Reich v. N.Y. City Transit Auth., 45 F.3d 646, 651–53 (2d Cir. 1995) (holding that the time law enforcement officers in the canine unit spent commuting in their own vehicles with their dogs was not work time, except to the extent that the officers actually had to stop to care for the dogs during the commutes).

     C.  The Deputies Are Not Entitled to Compensation Under the FMWA

The FMWA is to be interpreted as consistent with the FLSA. The Act provides, "Only those individuals entitled to receive the federal minimum wage under the federal Fair Labor Standards Act and its implementing regulations shall be eligible to receive the state minimum wage pursuant to s. 24, Art. X of the State Constitution and this section." Fla. Stat. § 448.110(3); accord Fla. Const. art. X,

17

§ 24(f) ("It is intended that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations."). Because Plaintiffs are not entitled to compensation under the FLSA for their donning and doffing or commuting, their Florida law claims also fail.

## IV.    CONCULSION

For the foregoing reasons, we conclude that the deputies are not entitled to compensation for the time that they spent donning and doffing protective gear or the time that they spent commuting in marked patrol vehicles. We therefore affirm the district court's grant of summary judgment in favor of the sheriffs.[7]

AFFIRMED.

---

[7] All other arguments made by the deputies are rejected without need for discussion.

HULL, Circuit Judge, concurring in part and dissenting in part:

I concur in full in the majority opinion, except for Section III (B) and (C). I agree with the majority opinion that the plaintiff deputies are not entitled to compensation under the FLSA or the FMWA for the time that they spend donning and doffing their police gear at home. However, based on the record in this case, I disagree about the time the deputies spend driving to and from work in their marked patrol vehicles because they are required to perform their law enforcement duties and work during that drive time.

Generally, the time spent by an employee commuting to and from work is not compensable. But there are exceptions to this rule, such as when the employee must perform work during his commute. See 29 C.F.R. § 785.41.

Here, the record in the light most favorable to the plaintiffs reveals that the defendant sheriffs require that their deputies during their commutes not only keep their radios on and respond to emergencies if called, but also require that the deputies monitor the roads for all traffic violations and emergencies and actively use their radar detectors to determine whether other drivers are speeding. Hence, the deputies are actively working and doing much more than passively listening to their radios for emergency calls and, therefore, fall beyond the scope of the regulation relied on by the majority opinion, 29 C.F.R. § 553.221(f).

19

Other courts assessing the compensability of commute times have made the sensible distinction between active and passive duties performed by an employee during his commute. See e.g., Reich v. N.Y.C. Transit Auth., 45 F.3d 646, 648–49 (2d Cir. 1995) (explaining that "the only compensable portion of the commute is the time spent by the [plaintiff dog handlers] *actively* caring for their dogs" and noting that the FLSA excludes from compensation time spent on "relatively effortless" activities). I would make this same distinction here and hold that the deputies' commute times are compensable because they are required to actively perform their law enforcement work during that drive time.

The majority opinion concludes that the activities performed by the deputies during their commutes are incidental to the use of their marked patrol vehicles, reasoning that it would be "highly inappropriate" for the deputies to not observe the roads for traffic violations and emergencies during their commutes. See supra pp. 14–15. I disagree with this analysis when applied to the facts of these cases. Indeed, the activities performed by the deputies during their commutes are some of the very traffic-related duties that the deputies were hired to perform, such as actively using their radar detectors and monitoring the roads for traffic violations. They are therefore principal law enforcement activities.

20

Given the record at this summary-judgment juncture, I respectfully dissent to

Section III (B) and (C).[1]

_____

[1] The defendant sheriffs also argue that, even if the time that the deputies spent donning and doffing their gear and commuting to and from their shifts is compensable, the sheriffs would not be in violation of the FLSA's or the FMWA's minimum wage provisions because, on average, the deputies were paid an hourly rate that exceeded the statutes' minimum wage requirements. The defendant sheriffs point out that even if the deputies spend an hour commuting each way, they are paid $31 an hour, and when all their hours are averaged, their pay is above the minimum wage. As the parties agree, five Circuits have adopted this "averaging method." U.S. Dep't of Labor v. Cole Enter., Inc., 62 F.3d 775, 780 (6th Cir. 1995); Hensley v. MacMillan Bloedel Containers, Inc., 786 F.2d 353, 357 (8th Cir. 1986); Dove v. Coupe, 759 F.2d 167, 171–72 (D.C. Cir. 1985); Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1198 (4th Cir. 1969); United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960). But the plaintiff deputies argue that (1) the text of the FLSA's and the FMWA's minimum wage provisions require that employers pay their employees a certain rate for each hour work, not an average rate over all hours worked, and (2) if the defendant sheriffs do not pay the plaintiffs for the hours the deputies spend actively working during their commute, then the sheriffs are paying the deputies $0 per hour for those activities, and therefore in violation of the FLSA and the FMWA. This Circuit has neither adopted nor rejected the averaging method. Because the majority opinion does not reach this issue, I do not either.

21