Perez v. The City of New York

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2015

(Argued:  November 30, 2015    Final Submission:  January 22, 2016

Decided:  August 2, 2016)

Docket No. 15-315

————————————

Henry Perez, Baselice Ralph, Juan Bayron, Jerry Cordero, Ronald Eason, Donald Koonce, Joseph Oro, Ruben Rios, Jr., Pedro Rosado, and Derek G. Walther, on behalf of themselves and others similarly situated,
*Plaintiffs-Appellants*,

v.

The City of New York, Mayor Bill de Blasio, The New York City Department of Parks & Recreation, and Mitchell J. Silver, in his official capacity as Commissioner of the Department of Parks & Recreation,
*Defendants-Appellees*.[*]

————————————

Before:          SACK, CHIN, and LOHIER, *Circuit Judges*.

Current and former Assistant Urban Park Rangers employed by New York City's Department of Parks & Recreation filed a collective action in the United States District Court for the Southern District of New York alleging violations of the Fair Labor Standards Act, including the Department's refusal to compensate them for time spent putting on and taking off ("donning and doffing") required uniforms.  The district court (Shira A. Scheindlin, *Judge*) granted partial summary

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

judgment for the defendants and, without further proceedings, closed the case.

We conclude that the district court erred both in granting partial summary judgment and in closing the case while several claims remained unresolved. The judgment of the district court is therefore vacated and the cause remanded for further proceedings.

VACATED and REMANDED.

JAMES REIF (Amelia K. Tuminaro, *on the brief*), Gladstein, Reif & Meginniss, LLP, New York, NY, *for Plaintiffs-Appellants*.

DEVIN SLACK, of counsel, *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.

RACHEL GOLDBERG, Senior Attorney (Jennifer S. Brand, Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, Mary E. McDonald, Senior Attorney, *on the brief*), *for* M. Patricia Smith, Solicitor of Labor, U.S. Department of Labor, Washington, DC, *for Amicus Curiae the Secretary of Labor in support of Plaintiffs-Appellants*.

SACK, *Circuit Judge*:

The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, regulates the manner in which many New York City employees must be paid. The statute defines certain employment-related activities as compensable and

sets parameters for both regular and overtime wages. In this case, several active and former Assistant Urban Park Rangers ("AUPRs") employed by the City's Department of Parks & Recreation ("Parks Department") allege that they, and others similarly situated, were not paid in accordance with the FLSA's requirements.

**BACKGROUND**

AUPRs are employed to perform a range of public services in the City's parks. For the purposes of this appeal, the defendants accept the plaintiffs' assertion that those services include: "providing directions and other information to persons seeking to use parks or pools; providing assistance to those persons involved in accidents or those who may be victims of unlawful activity and investigating such accidents or activity; implementing crowd control procedures at special events; providing safety and educational information to the public; and issuing summonses to or making arrests of persons suspected of unlawful conduct" under "laws, including New York City rules and regulations, governing use of the parks and pools." Appellants' Br. at 10; *see* Appellee's Br. at 10-11.

During a shift, AUPRs are required to wear uniforms comprising both professional clothing and equipment. The professional clothing includes "olive

drab" pants and jacket, "'Smokey the Bear' style hats," and various Parks Department insignias, while the equipment includes a bulletproof vest and a utility belt holding handcuffs, gloves, a radio, a flashlight, a baton, a can of mace, a summons book, and a tape recorder. App'x 213-14 (official Parks Department uniform policy). The plaintiffs' estimates of the time needed to don and doff those uniforms each day (that is, to put them on before a shift and take them off afterward) range from approximately five to thirty minutes.

The plaintiffs claim that the defendants — the Parks Department and its Commissioner, along with the City and its mayor — provided inadequate compensation for their work as AUPRs in four respects: (1) by failing to pay wages for compensable activities that the plaintiffs performed immediately before and after their regularly scheduled shifts, including donning and doffing their uniforms; (2) by failing to pay wages for compensable activities that the plaintiffs performed during lunch breaks; (3) by providing one hour, rather than one hour and a half, of compensatory leave for each hour of overtime that the plaintiffs worked; and (4) by providing compensatory leave, rather than monetary payment, for overtime that the plaintiffs worked after individually accruing 480 hours of compensatory leave. The defendants counter that, to the

4

extent the FLSA applied to the plaintiffs and their employment, their compensation complied with the statute.

After the close of discovery, the defendants moved for partial summary judgment on several discrete issues. First, they argued that the plaintiffs' donning and doffing of uniforms were not compensable activities under the FLSA, for three independent reasons: (i) the activities were not "integral and indispensable" to the plaintiffs' principal activities during a shift; (ii) the time spent donning and doffing should be discounted as *de minimis*; and (iii) in any event, that time was rendered non-compensable by the plaintiffs' collective bargaining agreement. Second, the defendants contended that any claim premised on work performed before June 22, 2009, was barred by the FLSA's limitations period. Third, they asserted that the plaintiffs were not entitled to compensation for the overtime they allegedly worked before and after their shifts, or during meal breaks, because they did not adequately report it. Finally, the defendants argued that the Parks Department was not a proper party to the lawsuit.

In its January 15, 2015 decision, the district court (Shira A. Scheindlin, *Judge*) concluded as a matter of law that the plaintiffs' donning and doffing of

uniforms were not compensable activities under the FLSA because they did not qualify as integral and indispensable to the plaintiffs' principal activities. *Perez v. City of New York*, No. 12 Civ. 4914, 2015 WL 424394, at *5, 2015 U.S. Dist. LEXIS 13425, at *16 (S.D.N.Y. Jan. 15, 2015). The court granted partial summary judgment for the defendants on that basis alone, without reaching the additional arguments made in the motion. *See id.* The court then ordered the case closed. *Id.* The plaintiffs timely appealed, arguing that the district court erroneously granted partial summary judgment on the compensability of their donning and doffing and prematurely closed the case.

**DISCUSSION**

We vacate the district court's decision and remand for further proceedings. On the current record, we cannot conclude as a matter of law that the plaintiffs' donning and doffing of uniforms were not integral and indispensable to their principal activities as AUPRs — the sole ground on which the district court granted partial summary judgment. We therefore remand to allow the district court to decide, in the first instance, whether the plaintiffs' donning and doffing are nevertheless non-compensable as a matter of law under the *de minimis* doctrine or the terms of a collective bargaining agreement. The district court

should also resolve the issues that the defendants raise as to their entitlement to partial summary judgment on other aspects of the plaintiffs' claims, which the January 15, 2015 decision erroneously failed to reach. Absent another appeal or additional motions by the parties that dispose of the action in its entirety, the case should then proceed to trial.

**I.    Donning and Doffing**

*A.    "Integral and Indispensable"*

The FLSA generally mandates compensation for "the principal activity or activities which [an] employee is employed to perform," 29 U.S.C. § 254(a)(1), including tasks — even those completed outside a regularly scheduled shift — that are "an integral and indispensable part of the principal activities," *IBP, Inc. v. Alvarez*, 546 U.S. 21, 30 (2005) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)). But the FLSA does not require payment for time spent on "activities which are preliminary to or postliminary to" an employee's principal activities. 29 U.S.C. § 254(a)(2). The parties dispute which standard applies to the plaintiffs' donning and doffing of uniforms: The plaintiffs characterize those tasks as integral and indispensable to (and thus part of) their principal activities as

AUPRs, while the defendants describe them as preliminary or "postliminary"[1] to all principal activities. The district court concluded that the defendants were correct as a matter of law. After reviewing the record *de novo*,[2] we disagree.

An activity qualifies as "integral" if it is "intrinsically 'connected with'" a principal activity that an employee was hired to perform. *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591 (2d Cir. 2007) (quoting *Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956)). And an activity is "indispensable" if it is "necessary" to the performance of a principal activity. *Id.* at 592. An activity is therefore "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 517 (2014).

Although this standard is markedly "fact-dependent," *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 359 (2d Cir. 2011), prior decisions have identified several considerations that may serve as useful guideposts for its application. As

---

[1] For a commentary on the statute's use of the word "postliminary", see Eugene Volokh, *Postliminary:*, Volokh Conspiracy (Aug. 21, 2009, 2:12 PM), http://volokh.com/2009/08/21/postliminary/, *archived at* https://perma.cc/SE2J-YKVN.

[2] "We review *de novo* a district court's grant of summary judgment, drawing all reasonable factual inferences in the non-moving party's favor . . . ." *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 410 (2d Cir. 2015).

we have explained, "[t]he more the [pre- or post-shift] activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable." *Reich v. N.Y.C. Transit Auth.*, 45 F.3d 646, 650 (2d Cir. 1995). Relatedly, an employer's requirement that pre- or post-shift activities take place at the workplace may indicate that the activities are integral and indispensable to an employee's duties. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003) (concluding that donning and doffing of protective gear were integral and indispensable activities in part because they had to be performed at the workplace), *aff'd*, 546 U.S. 21 (2005); *cf. Bamonte v. City of Mesa*, 598 F.3d 1217, 1231 (9th Cir. 2010) (concluding that donning and doffing of police uniforms were not integral and indispensable activities in part because they were "not required by law, rule, the employer or the nature of the police officers' work to be performed at the employer's premises").

Applying those principles, this Court and others have concluded that an employee's pre- and post-shift preparation of items used to perform principal activities can qualify as integral and indispensable. In *King Packing*, for example, the Supreme Court held that a slaughterhouse employee's knife sharpening was

integral and indispensable to the principal activity of butchering. *See* 350 U.S. at 263. Similarly, in *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706 (2d Cir. 2001), we concluded that a reasonable factfinder might classify a radiological technician's powering up and testing of an x-ray machine as integral and indispensable to the principal activity of taking x-rays, *see id.* at 717-18. And in *Reich*, we decided that a K-9 officer's feeding, walking, and training of his dog was integral and indispensable to his principal law enforcement activities. *See* 45 F.3d at 650-52. All of these activities occurred before or after regularly scheduled shifts, or during lunch breaks.

Courts have also concluded that an employee's pre- and post-shift efforts to protect against heightened workplace dangers can qualify as integral and indispensable. In *Steiner*, the Supreme Court decided that employees who worked in a battery plant should be compensated under the FLSA for the time they spent showering and changing clothes at the workplace after a shift. Those tasks, the Court reasoned, were integral and indispensable to the employees' principal activities because they prevented lead poisoning, an acute danger attendant to work in the plant. *See* 350 U.S. at 249-53, 256. Similarly, in *Alvarez*, the Ninth Circuit concluded that slaughterhouse employees' donning and

doffing of protective equipment, including "metal-mesh gear," qualified as integral and indispensable to their butchering work. *See* 339 F.3d at 898 n.2, 902-04. And in *Gorman*, we acknowledged that an employee's efforts to protect against "workplace dangers that transcend ordinary risks" may qualify as integral and indispensable, although we concluded that employees at a nuclear power plant did not protect against such heightened dangers merely by donning and doffing "generic" helmets, safety glasses, and steel-toed boots. *See* 488 F.3d at 592-94.

With those precedents in mind, and viewing the record in the light most favorable to the plaintiffs, we think that a reasonable factfinder could conclude that the plaintiffs' donning and doffing of uniforms are integral and indispensable to their principal activities as AUPRs. Several relevant considerations point in that direction.

As an initial matter, the donning and doffing of an AUPR's uniform are activities "undertaken for the employer's benefit," with no choice on the employee's behalf. *Reich*, 45 F.3d at 650. The Parks Department prescribes the components of the uniform in painstaking detail, and AUPRs may be disciplined for non-compliance. *See* App'x 213-16, 218. Relatedly, substantial evidence in the

11

record indicates — and we therefore assume at this stage of the proceedings — that the Parks Department requires AUPRs to don and doff their uniforms at the workplace, *see id.* 245-57, another factor that suggests those tasks may qualify as integral and indispensable, *see Alvarez*, 339 F.3d at 903.

More fundamentally, the uniforms appear to be vital to "the primary goal[s] of [the plaintiffs'] work" during a shift. *See Reich*, 45 F.3d at 650. To begin with, an AUPR's utility belt holds items used to perform law-enforcement duties. A summons book is, of course, necessary for the issuance of summonses. A baton, mace, and handcuffs, in turn, may be critical in effecting an arrest. And a radio and flashlight may prove crucial in tracking suspects and coordinating with other municipal employees. We are inclined to classify these items as tools of an AUPR's trade, arguably analogous to a butcher's knife, a radiological technician's x-ray machine, or a K-9 officer's dog. In keeping with *King Packing*, *Kosakow*, and *Reich*, therefore, we think that a reasonable factfinder could conclude that the donning and doffing of an AUPR's utility belt are integral and indispensable tasks.

An AUPR's bulletproof vest more closely resembles the type of protective gear analyzed in *Gorman* and *Alvarez*. Like the helmets, safety glasses, and metal

12

mesh at issue in those decisions, the vest is not a tool used to perform principal activities; rather, the record indicates that it functions solely to protect against risks collateral to those activities. We recognized in *Gorman* that the use of such protective gear may be integral and indispensable to an employee's principal activities where it guards against "workplace dangers that transcend ordinary risks." 488 F.3d at 593. The risk of sustaining gunfire while enforcing municipal laws is not, in our view, an ordinary risk of employment. Under *Gorman*, therefore, the donning and doffing of an AUPR's bulletproof vest also may qualify as integral and indispensable.[3]

Professional clothing appears to be comparably essential to an AUPR's work. Uniforms generally serve to identify employees to others, and for many jobs (waiting tables, for example) that function may be a mere convenience. In the case of law-enforcement personnel, however, identification to the public is more fundamentally intertwined with the objectives of employment. According

---

[3] As tools used to perform relatively dangerous law-enforcement tasks more effectively, a baton, mace, and handcuffs also afford a degree of protection to an AUPR. In that sense, they might be analyzed, at least in part, under *Gorman*'s framework. We think the rubric established by *Kosakow* and *Reich*, which applies to tools of the trade, is more apt — and, as we have explained, it suffices to demonstrate that an AUPR's baton, mace, and handcuffs may qualify as integral and indispensable to her principal activities. But our decision does not foreclose the factfinder, on remand, from considering the significance of the protective dimension of these items under *Gorman*.

13

to the declarations of former AUPRs, it is professional Parks Department clothing, with its recognizable color scheme and insignias, that not only attracts citizens in need of assistance but also establishes an AUPR's authority to investigate violations, issue summonses, make arrests, and otherwise intervene in emergency situations. *See* Declaration of Marlena Poelz-Giga dated May 16, 2014 ("Poelz-Giga Decl.") ¶ 12, App'x 194; Declaration of Ralph Baselice dated May 13, 2014 ("Baselice Decl.") ¶ 8, App'x 230. Without such a visible signal of authority, an AUPR's efforts to instruct the public and enforce park rules, perhaps with force, could be ineffective and even perilous — the AUPR might be mistaken for a citizen breaking the law rather than a government official enforcing it. *See Lemmon v. City of San Leandro*, 538 F. Supp. 2d 1200, 1205 (N.D. Cal. 2007) ("[W]hen determining if the uniform is necessary to the work of a police officer, it is of great consequence that these 'clothes' are of a particular color and design that afford the wearer special powers and deference in our society."). Moreover, evidence in the record indicates that "Parks Department supervisors frequently tell AUPRs that [their] role is to be a highly visible uniformed presence in New York City." Poelz-Giga Decl. ¶ 12, App'x 194; *see also* Baselice Decl. ¶ 8, App'x 230. That instruction blurs the distinction between

14

wearing the uniform and performing the job. For these reasons, the donning and doffing of an AUPR's professional clothing, no less than her equipment, could reasonably be viewed as integral and indispensable to her principal activities.

We therefore cannot conclude, as a matter of law, that the plaintiffs' donning and doffing of uniforms are not integral and indispensable to their principal activities as AUPRs. In deciding otherwise, the district court erred in three respects. First, it mistakenly classified the plaintiffs' uniforms, in their entirety, as serving solely to protect against workplace hazards. In fact, only an AUPR's bulletproof vest fits that description. As noted, certain other parts of the uniform — including the baton, mace, and handcuffs — may offer a degree of protection. But these items are not solely protective; they also function as tools of the trade used to perform law-enforcement tasks, including arrests. The district court erroneously failed to analyze the legal significance of that distinct type of utility.

Second, the court mistakenly characterized the protective elements of an AUPR's uniform as comparably "generic" to the helmets, safety glasses, and steel-toed boots at issue in *Gorman*. Those items qualified as generic because they were widely available to the public and commonly worn in a range of settings.

15

The same cannot be said of an AUPR's bulletproof vest, baton, mace, or handcuffs, all of which are relatively specialized products available only from select sources and used primarily by law enforcement and security personnel.

Compounding those errors, the district court misconstrued *Gorman* as establishing that generic protective gear is never integral and indispensable to an employee's principal activities. *Gorman* did not endorse any such categorical rule. The Court there held that nuclear power plant employees' donning and doffing of helmets, safety glasses, and steel-toed boots did not qualify as integral and indispensable because the items at issue guarded against only routine workplace risks. *See* 488 F.3d at 592-93. The generic nature of the items may have pointed toward that ultimate conclusion, because generic equipment is more likely than specialized equipment to address workplace conditions that are commonplace. But the items' generic nature did not *establish*, as a matter of law, that they guarded against only routine risks. As *Steiner* demonstrates, items as generic as a shower and a change of clothes can, in certain circumstances, neutralize extreme threats to worker safety. *See* 350 U.S. at 252-53, 256. To decide whether the use of protective gear qualifies as integral and indispensable, therefore, courts always must determine whether the gear — however generic or

specialized — guards against "workplace dangers" that accompany the employee's principal activities and "transcend ordinary risks." *Gorman*, 488 F.3d at 593. This inquiry requires a fact-intensive examination of the gear at issue, the employee's principal activities, and the relationship between them.

   B.   *The* De Minimis *Doctrine and the Plaintiffs' Collective Bargaining Agreement*

In their motion for partial summary judgment, the defendants argued that the plaintiffs' donning and doffing of uniforms would be non-compensable on two additional, independent grounds: that the time spent on those activities qualified as *de minimis*, *see Reich*, 45 F.3d at 652-53 (describing and applying the *de minimis* doctrine); and that, in any event, the time was rendered non-compensable by the plaintiffs' collective bargaining agreement, *see* 29 U.S.C. § 203(o) (providing that when tabulating "the [compensable] hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee"). Because the success of both of these arguments is fact-dependent, we leave it to the district court, on remand, to

address them in the first instance. In doing so, the court may expand, as in its discretion may be necessary, the factual analysis contained in the January 15, 2015 decision.

**II.	Remaining Arguments for Partial Summary Judgment**

The defendants also sought partial summary judgment on three additional issues that the district court has not yet addressed: that any claim premised on work performed before June 22, 2009 is barred by the FLSA's limitations period; that the plaintiffs were not entitled to compensation for purported overtime hours that they did not adequately report; and that the Parks Department is not a proper defendant. On remand, the court should also address those issues in the first instance. Again, the court may expand the factual analysis contained in the January 15, 2015 decision as it deems necessary.

**CONCLUSION**

For the foregoing reasons, we VACATE the district court's January 15, 2015 decision granting partial summary judgment for the defendants and REMAND for further proceedings consistent with this opinion.

18