**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1070

_____

RODNEY TYGER, on behalf of himself and those similarly situated;
SHAWN WADSWORTH, on behalf of himself and those similarly situated,
Appellants

v.

PRECISION DRILLING CORP., PRECISION DRILLING OILFIELD SERVICES,
INC.; JOHN DOES 1-10; PRECISION DRILLING COMPANY, LP

_____

On Appeal from the United States District Court for the
Middle District of Pennsylvania
(District Court No.: 4-11-cv-01913)
District Judge:  Honorable Matthew W. Brann

_____

Submitted under Third Circuit L.A.R. 34.1(a)
September 24, 2020

(Filed: October 26, 2020)

Before:  McKEE, JORDAN and RENDELL, *Circuit Judges*.

_____

O P I N I O N*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Plaintiffs/Appellants Rodney Tyger, Shawn Wadsworth, and approximately 1,000 opt-in Plaintiffs brought a collective action against Defendants Precision Drilling Corp., Precision Drilling Oilfield Services, Inc., and Precision Drilling Company, LP (together, "Precision") for failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. On appeal, Plaintiffs challenge the District Court's denial of their motion for partial summary judgment and grant of summary judgment in favor of Precision. In addition, Plaintiffs appeal the District Court's order excluding Plaintiffs' proposed expert under *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). For the reasons set forth below, we affirm in part, vacate in part, and remand for further proceedings.

## I.    BACKGROUND[1]

Plaintiffs are current and former Precision employees who have worked as rig hands on Precision oil and gas drilling rigs. They filed this collective action seeking damages under the FLSA for Precision's failure to pay them for, *inter alia*, (1) pre-shift donning and post-shift doffing of certain personal protective equipment ("PPE") and (2) the associated time spent walking and waiting after donning and before doffing.[2] It is not disputed that Precision failed to pay for those activities. Rather, the central question in

---

[1] Because we write primarily for the parties, who are familiar with the facts and procedural posture to date, we recite only those facts necessary to our analysis.
[2] Plaintiffs initially asserted a third claim—for failure to pay for time spent attending post-shift safety meetings—which was later settled.

this case is whether donning and doffing the PPE at issue is compensable under the FLSA.

Pursuant to both Precision's policies and the relevant Occupational Safety and Health Administration ("OSHA") regulations,[3] Plaintiffs are required to wear various forms of basic PPE while operating oil rigs, including flame-retardant coveralls, steel-toed boots, gloves, goggles, hardhats, and earplugs ("basic PPE"). This basic PPE is worn to avoid common hazards at the worksite, such as electrical shock, falling objects, flying debris, slippery surfaces, and chemical exposure.[4] It is undisputed that, in the course of rig hands' work drilling oil and gas wells, their basic PPE becomes covered with drilling mud, grease, lubricants, and caustic chemicals, and that the basic PPE reduces the risk of exposure to those substances.

With respect to the issue of chemical exposure, Plaintiffs offered the report and testimony of proposed chemical hygiene expert Dr. Ronald Bishop, Ph.D., CHO. Dr. Bishop opined on the health risks associated with exposure to certain hazardous materials on the rigs, in addition to the benefits of wearing PPE.

After the close of discovery, the parties filed cross-motions for partial summary judgment. The District Court initially granted Precision's motion only with respect to

---

[3] *See* 29 C.F.R. § 1910.132 (mandating PPE "wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact").
[4] Certain tasks on Precision oil rigs require additional, specialized PPE such as rubber aprons, disposable Tyvek suits, rubber gloves, face shields, and respirators to protect against increased chemical exposure. Time spent donning and doffing that additional, specialized PPE is compensated and not at issue in this case.

Plaintiffs' claim that Precision's failure to pay for donning and doffing was a willful violation of the FLSA—an issue bearing on the applicable statute of limitations. The District Court denied Precision's motion in all other respects and denied Plaintiffs' motion in full. In so ruling, the District Court found a genuine dispute of material fact with respect to whether donning and doffing the basic PPE was an "integral and indispensable"—and therefore compensable—part of Plaintiff's principal activities as rig hands. Specifically, the District Court determined that factual issues remained regarding "the harmful nature of the drilling mud and other chemicals which are commonplace in Plaintiffs' principal duties." App. 46.

Precision later filed a *Daubert* motion to exclude the report and testimony of Dr. Bishop. Finding Dr. Bishop's proffered opinions unreliable, the District Court granted the *Daubert* motion and ordered Plaintiffs to show cause why, given the exclusion of Dr. Bishop, summary judgment should not be granted for Precision on Plaintiffs' overtime claims. The District Court concluded that, absent expert testimony, Plaintiffs failed to raise a genuine dispute of material fact as to whether donning and doffing was compensable under the FLSA, and granted summary judgment on the overtime claims in favor of Precision. Plaintiffs timely appealed.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court exercised jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C § 1291 to review the District Court's final order.

We review a district court's decision to exclude expert testimony for abuse of discretion. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). An evidentiary

4

ruling constitutes an abuse of discretion if it is "arbitrary, fanciful or clearly unreasonable," and "[w]e will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the district court's view." *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 519 (3d Cir. 2003) (internal quotation marks omitted). We review *de novo* a district court's decision to grant or deny summary judgment. *Tundo v. City of Passaic*, 923 F.3d 283, 286 (3d Cir. 2019).

## III.   DISCUSSION

Plaintiffs raise three issues on appeal.  First, they challenge the District Court's exclusion of Dr. Bishop's expert report and testimony.  Second, Plaintiffs argue that the District Court erred in concluding as a matter of law that, given the absence of expert testimony, donning and doffing was not integral and indispensable to their principal activities as rig hands.  Third, Plaintiffs contend that the District Court erred in granting summary judgment on the issue of Precision's willfulness.  We disagree with Plaintiffs on the first and third issues but agree with them on the second issue.  We address each argument in turn.

### A.   Exclusion of Dr. Bishop's Expert Report and Testimony

Plaintiffs first contend that the District Court abused its discretion in excluding the report and testimony of Dr. Bishop under Federal Rule of Evidence 702[5] and *Daubert*.

---

[5] Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

Pursuant to *Daubert* and its progeny, district court judges have a "gatekeeping" obligation to insure that only reliable and relevant expert testimony be presented to jurors. *Daubert*, 509 U.S. at 597. In this role, district courts must ensure that expert testimony satisfies a "trilogy of restrictions": qualification, reliability, and fit. *Schneider ex rel. Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2013). The overriding consideration with regard to these three requirements is that expert testimony should be admitted if it will assist the trier of fact. *See United States v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995).

The reliability prong is at issue in this case. To be reliable, an expert opinion must "be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert*, 509 U.S. at 590). While a party need not "demonstrate to the judge by a preponderance of the evidence that the assessments of [its] experts are *correct*," the expert must nonetheless "have 'good grounds' for his or her belief." *Id.* at 742, 744. This test of reliability is "flexible," and the trial court exercises "broad latitude" in determining how to assess the reliability of an expert opinion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999).

In this case, the District Court did not abuse its discretion in determining that the

---

(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

opinions of Dr. Bishop were unreliable. Dr. Bishop offered four main opinions: (1) that hazardous materials are present in Precision "drilling fluids, materials encountered in rock formations . . . , and the products of chemical or physical reactions between drilling fluid components and compounds in produced cuttings and fluids"; (2) that PPE[6] provides protection from direct exposure to those hazardous materials; (3) that in the course of Plaintiffs' work, their PPE becomes contaminated with hazardous materials; and (4) that it would be unsafe to doff soiled PPE off the worksite. Dr. Bishop specifically identified glycol ethers and radioactive material as two hazardous substances present in Plaintiffs' work environment. By underscoring the chemical safety hazards of oil drilling, the importance of wearing PPE, and the need for Precision employees to change their PPE on the worksite, Dr. Bishop's report and testimony would bolster Plaintiffs' claim that donning and doffing is integral and indispensable to their work, and therefore compensable under the FLSA.

The parties in this case dispute the magnitude of the chemical safety hazards identified by Dr. Bishop. As the District Court correctly pointed out, however, Dr. Bishop lacked quantitative data on the levels of Plaintiffs' exposure to glycol ethers, radioactive materials, or any other hazardous substances present on the Precision worksite. The District Court determined that without exposure data, Dr. Bishop's opinions on the chemical hazards faced by Plaintiffs, and critically, the importance of wearing and doffing PPE on-site, lacked good grounds. That conclusion was not

---

[6] We note that Dr. Bishop's report does not distinguish between the basic PPE at issue in this case and the specialized PPE that is not in dispute.

7

unreasonable.[7] *See, e.g., Oddi v. Ford Motor Co.,* 234 F.3d 136, 156 (3d Cir. 2000) ("*Daubert . . .* require[s] more than [a] haphazard, intuitive inquiry."); *Elcock v. Kmart Corp.,* 233 F.3d 734, 755 (3d Cir. 2000) (noting that an expert opinion overly reliant on assumptions absent "sufficient factual predicates" is a "castle made of sand") (internal quotation marks omitted).

Accordingly, in light of the latitude afforded the District Court under the abuse of discretion standard, we will not disturb the District Court's exclusion of Dr. Bishop's report and testimony.

### B. Whether Donning and Doffing is Integral and Indispensable

We turn next to the parties' cross-motions for partial summary judgment and the District Court's entry of summary judgment in favor of Precision. Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Montone v. Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013); *see also* Fed. R. Civ. P. 56(a).

Plaintiffs urge that the District Court erred in granting summary judgment in favor of Precision because the District Court concluded that, without expert testimony, Plaintiffs could not prove that donning and doffing the basic PPE was integral and

---

[7] Plaintiffs submitted a supplemental declaration by Dr. Bishop approximately two years after the submission of his original report. Precision argues that the report is untimely and should therefore be excluded. Like the District Court, we need not address that argument because Dr. Bishop's supplemental declaration, which also lacks any reference to exposure level data, would not render his conclusions reliable under *Daubert*.

indispensable to their work drilling oil and gas wells. Plaintiffs contend that even without an expert opinion regarding chemical exposure, they have presented other evidence that donning and doffing was nonetheless integral[8] and indispensable as a matter of law, or at a minimum, that genuine issues of fact preclude summary judgment in favor of Precision on this issue.

The FLSA generally requires that employers pay overtime wages to employees who work over 40 hours in a workweek. *See* 29 U.S.C. § 207(a)(1). However, the Portal-to-Portal Act provides two exceptions to this FLSA-mandated compensation: (1) for traveling to or from the "place of performance of the principal activity or activities which such employee is employed to perform"; and (2) for "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a). The Supreme Court has held that "principal activities" encompass "all activities which are an 'integral and indispensable part of the principal activities.'" *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 33 (2014) (quoting *IBP, Inc. v. Alvarez,* 546 U.S. 21, 29–30 (2005)). Thus, for donning and doffing the basic PPE in this case to be compensable under the FLSA—and not merely a preliminary or postliminary activity—it must be an integral and indispensable part of Plaintiffs' work as rig hands. *See id.*[9]

---

[8] According to Plaintiffs, the District Court has already concluded as a matter of law that donning and doffing was *integral* to their principal activities and only granted summary judgment in favor of Precision on the question of *indispensability.* We reject that characterization of the District Court's decision. The District Court did not determine as a matter of law that donning and doffing was an integral part of Plaintiffs' work as rig hands.

[9] With respect to Plaintiffs' second overtime claim, the parties agree that, pursuant to the Department of Labor's "continuous workday rule," the post-donning and pre-doffing

To demonstrate that an activity is integral and indispensable to a principal activity, a plaintiff must establish that "it is an intrinsic element of those [principal] activities and one with which the employee cannot dispense if he is to perform his principal activities." *Busk*, 574 U.S. at 32–33. The analysis of this concept across various work settings is inherently flexible and context-specific. *See, e.g.*, *Mitchell v. King Packing Co.*, 350 U.S. 260, 263 (1956) (determining that sharpening knives is integral and indispensable to the work of meat packing employees); *Perez v. City of New York*, 832 F.3d 120, 125 (2d Cir. 2016) (considering whether the donning and doffing of bulletproof vests is integral and indispensable to the work of urban park rangers).

In evaluating whether the donning and doffing of PPE in this case qualified as integral and indispensable, the District Court adopted the inquiry set forth by the Second Circuit, mainly, whether "the gear . . . guards against 'workplace dangers' that accompany the employee's principal activities and 'transcend ordinary risks.'" *Perez*, 832 F.3d at 127 (quoting *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 593 (2d Cir. 2007)). But the District Court then focused on the toxic chemicals in Plaintiffs' work environment, and specifically, the level of toxicity, which, it concluded, presented a genuine issue of material fact. Citing Dr. Bishop's report and testimony, the District

---

walking and waiting time is compensable only if donning and doffing is also compensable. *See* 29 C.F.R. § 790.6(b) (generally defining the "workday" as "the period between the commencement and completion on the same workday of an employee's principal activity or activities"); *Alvarez*, 546 U.S. at 37 ("Moreover, during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity . . . is covered by the FLSA."). As such, the crux of the parties' dispute is whether donning and doffing the basic PPE is integral and indispensable to Plaintiffs' principal activities.

Court initially concluded that factual disputes regarding the "harmful nature of the drilling mud and other chemicals which are commonplace in Plaintiffs' principal duties" and "the level of chemical toxicity to which Plaintiffs are exposed" precluded summary judgment in favor of either party. App. 46, 49.

After excluding Dr. Bishop's opinions, the District Court incorrectly determined that—absent Dr. Bishop's expert testimony regarding toxicity—Plaintiffs could not prove that Precision rig hands' work was sufficiently hazardous. Significantly, we have identified no FLSA case in the donning and doffing context that requires plaintiffs to provide an expert opinion on workplace safety risks or the protective value of their PPE in order to meet the integral and indispensable standard.

The District Court further erred by analogizing this case to toxic tort actions, which often require plaintiffs to produce expert testimony on their chemical exposure. *See* App. 6 (citing *N'Jai v. U.S. Env't Prot. Agency*, 705 F. App'x 126, 128 (3d Cir. 2017); *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 869 F.3d 246, 251, 267 (3d Cir. 2017); *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 845 (3d Cir. 1995)). Such cases are clearly distinguishable from this case. Unlike in the toxic tort context, the FLSA integral and indispensable inquiry does not require that Plaintiffs establish a causal link between occupational hazards and medical harm. *See, e.g.*, *In re TMI Litig.*, 193 F.3d 613, 626–27 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (noting plaintiffs' burden to demonstrate chemical exposure and causation).

We therefore conclude that a plaintiff may attempt to satisfy the integral and indispensable requirement with lay witness testimony and documentary evidence

11

concerning worksite safety risks and the nature of the job and PPE at issue—evidence which Plaintiffs have produced in this case. *See, e.g.*, *Busk*, 574 U.S. at 36 (holding that "[t]he integral and indispensable test is tied to the productive work that the employee is employed to perform") (emphasis omitted); *Perez*, 832 F.3d at 127 ("This inquiry requires a fact-intensive examination of the gear at issue, the employee's principal activities, and the relationship between them."). Thus, while expert testimony as to the levels of Plaintiffs' chemical exposure would certainly support Plaintiffs' case, *see Steiner v. Mitchell*, 350 U.S. 247, 249 (1956), such evidence is not required as a matter of law.

Because the District Court improperly determined that expert testimony was necessary in this case, the District Court never reached the issue of whether, based on the other evidence presented by Plaintiffs, donning and doffing the basic PPE was integral and indispensable to Plaintiffs' work. Thus, we will not address this question but will vacate that part of the District Court order granting summary judgment on Plaintiffs' overtime claims and remand[10] for further proceedings.[11]

---

[10] We note that the question of whether donning and doffing is integral and indispensable to Plaintiffs' principal activities may be susceptible to determination by the District Court as a matter of law or may be more properly left for the jury. *Compare Perez*, 832 F.3d at 125 (holding "that a reasonable factfinder could conclude that the plaintiffs' donning and doffing of uniforms are integral and indispensable to their principal activities"), *with Franklin v. Kellogg Co.*, 619 F.3d 604, 620 (6th Cir. 2010) (determining the integral and indispensable question as a matter of law).
[11] We do not address two other arguments advanced by Precision, namely that donning and doffing is not compensable under the Department of Labor's so-called "change-at-home" rule, 29 C.F.R. § 790.8(c), and that a factual dispute remains as to whether any time spent donning and doffing was *de minimis*. The District Court did not address the first argument and we decline to do so as well.

## C. Willful Violation of the FLSA

Plaintiffs also argue that the District Court erred in concluding that there were no genuine issues of fact regarding whether Precision's failure to pay for donning and doffing was a willful violation of the FLSA. Under the FLSA, willful violations are entitled to a three-year statute of limitations, while non-willful violations are entitled to only a two-year limitations period. 29 U.S.C. § 255(a).[12] A FLSA violation is willful when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). However, willfulness "does not require a showing of egregiousness." *Stone v. Troy Constr., LLC*, 935 F.3d 141, 150 (3d Cir. 2019).

The District Court properly concluded that there was no genuine issue of fact as to whether Precision's conduct constituted a willful violation of the FLSA. As the District Court stated, Plaintiffs have failed to adduce any evidence that Precision "either knew or suspected that their practices were violative of the FLSA or recklessly disregarded the possibility of same." App. 52. It relied in part on the paucity of Third Circuit precedent that would inform Precision that donning and doffing was integral and indispensable in this context. *See Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011)

---

[12] The applicable statute of limitations is particularly significant in FLSA collective actions because, unlike with class actions under Federal Rule of Civil Procedure 23, an individual plaintiff's claim is not considered "commenced" until he opts into the lawsuit. *See* 29 U.S.C. § 256(b); *see also Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 200 (3d Cir. 2011) (distinguishing FLSA collective actions from Rule 23 class actions). As such, a shorter statute of limitations may limit the number of opt-in Plaintiffs able to seek relief and the total amount of damages available to them.

13

(noting the lack of "binding [Fourth Circuit] authority directly addressing the issue of compensation for the donning and doffing of protective gear" in reviewing the district court's finding with respect to willfulness); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 702–03 (3d Cir. 1994). Plaintiffs urge that Precision purported to have a policy whereby its employees were permitted to change out of PPE at home but that this policy was "illusory." But that evidence alone is not persuasive regarding Precision's awareness or reckless disregard of its obligations under the FLSA and is thus insufficient to defeat Precision's motion for partial summary judgment on Plaintiffs' willful violation claim.

Accordingly, we will affirm the District Court's ruling that there was no genuine factual dispute as to whether Precision's failure to pay for donning and doffing was a willful FLSA violation. Summary judgment on this issue was properly granted in favor of Precision.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's exclusion of Dr. Bishop's expert report and testimony and grant of summary judgment with respect to the issue of Precision's willfulness and the applicable statute of limitations. We will vacate the District Court's grant of summary judgment in favor of Precision in all other respects and remand for further proceedings consistent with this opinion.